Clarence Ebin **BRISCO**, Jr., Petitioner,

v.

**UNITED STATES** of America, Respondent.

Civ. A. No. 3085.

United States District Court
D. Delaware.

Oct. 28, 1965.

John T. Gallagher, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for petitioner.

Stanley C. Lowicki, Asst. U. S. Atty., Wilmington, Del., for respondent.

LAYTON, District Judge.

Clarence Ebin Brisco, Jr., appeared before this Court in January, 1964, as a defendant in Criminal Action No. 1586. He was charged with two violations of 18 U.S.C. § 1701 (obstructing United States mail) arising out of an assault on a United States Postal Carrier. Brisco entered a plea of not guilty, and waived trial by jury. He was found guilty under one count of the information, and the other count was dismissed.

After a 60-day period of observation and study in accordance with the provisions of T. 18 U.S.C. § 5010(e), the Youth Corrections Division recommended that defendant be sentenced under Section 5010(b) of the Youth Corrections Act. He was, accordingly, committed to the custody of the Attorney General of the United States for treatment and supervision until discharged by the Youth Corrections Division of the Board of Parole as provided in § 5017(c) of the Act.

The maximum sentence under the substantive offense in this case would have been not more than $100.00 fine or imprisonment for six months, or both. Under the Youth Corrections Act, Brisco is subject to federal treatment and supervision, in or out of institutions, up to a maximum period of six years, depending upon his response to such treatment and supervision.

Brisco has filed with this Court what amounts to a petition for habeas corpus, or a petition under 28 U.S.C. § 2255 for review of his sentence, in forma pauperis. This Court appointed counsel for the petitioner.

Counsel for petitioner and for respondent have agreed that there is merit in only one of petitioner's allegations of error—the question of his incarceration under the Youth Corrections Act for a period in excess of the maximum term for which he could have been sentenced under his substantive offense. This Court will, therefore, treat the petition as a request for review of sentence under 28 U.S.C. § 2255.

Superficially, it might appear unjust that Brisco could be sentenced for up to six years under the Youth Corrections Act, while the maximum penalty otherwise would have been six months. However, this view overlooks the purpose of the Act, which is the eventual rehabilitation of youthful offenders. The Act is in line with the modern trend in penology which accents rehabilitation, rather than punishment. In fact, if Brisco completes his treatment successfully, at or prior to the mandatory conclusion of his treatment of six years, his conviction may be expunged, under 18 U.S.C. § 5021. Brisco receives a quid

pro quo; in return for his extended [1] institutionalization and supervision, he is offered a planned program of education, treatment, and eventual rehabilitation. The fact that he may not want the benefits of such a program is beside the point. The benefits to him and, incidentally to the public at large, far outweigh his individual desires. Moreover, correspondence with the Youth Corrections Division indicates that petitioner may yet benefit from the program.

■ Contrary to his argument, the fact that petitioner can be and has been incarcerated for a period longer than would have been possible if sentence had been imposed for violation of the specific statute, does not deprive him of his constitutional rights to due process of law, and freedom from cruel and unusual punishment. Cunningham v. United States, 256 F.2d 467 (5 Cir. 1958); Young Hee Choy v. United States, 344 F.2d 126 (9 Cir. 1965); Eller v. United States, 327 F.2d 639 (9 Cir. 1964); Rogers v. United States, 326 F.2d 56 (10 Cir. 1963); Carter v. United States, 113 U.S.App.D.C. 123, 306 F.2d 283 (1962); Tatum v. United States, 114 U.S.App.D.C. 49, 310 F.2d 854 (1962); Standley v. United States, 318 F.2d 700 (9 Cir. 1963); and Hale v. United States, 347 F.2d 367 (10 Cir. 1965).

Counsel for petitioner has cited a series of cases which hold that where the maximum sentence under the Youth Corrections Act exceeds the statutory maximum penalty otherwise available for a specific offense, and a plea of guilty was entered by the youth without knowledge of the possibility of his being sentenced under the Youth Corrections Act, such youthful offender cannot be sentenced under the Act for a time exceeding the normal statutory penalty. Pilkington v. United States, 315 F.2d 204 (4 Cir. 1963); Workman v. United States, 337 F.2d 226 (1 Cir. 1964); Chapin v. United States, 341 F.2d 900 (10 Cir. 1965); and King v. United States, 346 F.2d 159 (10 Cir. 1965). (Contra in Marvel v. United States, 335 F.2d 101 (5 Cir. 1964).)

The holdings in the above cited cases do not apply to petitioner because he entered a plea of *not* guilty. Even conceding the force of the criticism contained in some of the above cited cases, for instance Pilkington v. United States, to the effect that incarceration under the Youth Corrections Program is, in fact, just as much a deprivation of liberty as incarceration in prison, nevertheless, an unbroken line of authorities upholds the constitutionality of the Act. The petition is denied.

1. Nor need the period of institutionalization even be an extended one. Conformity with the program and a spirit of cooperation may lead to a very speedy conditional discharge under supervision and a complete discharge one year thereafter. Instead this petitioner, until lately, has been a serious problem. According to the Director of the Bureau of Prisons:

"Briscoe was initially committed to Ashland, but was transferred to Petersburg shortly after classification because of his poor adjustment and degree of criminal sophistication. Less than two months after he arrived at Petersburg, he was involved in a serious racial disturbance on December 12, 1964. He was one of the leaders in the disturbance, badly slashed the face of one of the white inmates, used a club, was one of a small group of aggressive colored inmates who assaulted a white inmate, and was one of ten Negro inmates who did whatever they could to sustain the disturbance after staff had it pretty well under control. Because he was a ring leader, he was placed on a prison bus immediately for transfer to Lewisburg. He was placed in Lewisburg because his conduct during and preceding the disturbance demonstrated that he was not suitable for continued training and treatment at a youth reformatory. He was sent to Lewisburg, too, to separate him from others in the disturbance who were sent to our reformatory in Chillicothe, Ohio because we believed they were still suitable for a reformatory. The nature of his current offense was another indication of the aggressive behavior which contributes to his unsuitability for a reformatory.

"Since his transfer to Lewisburg, Briscoe's behavior has improved a great deal, and staff there advised us just today that he is trying to get along well in his program."