**UNITED STATES of America**

v.

**Tyrone P. WATERS, Appellant.**

**No. 23618.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 24, 1970.

Decided Nov. 17, 1970.

Mr. Eugene E. Threadgill, Washington, D. C. (appointed by this Court), for appellant.

Mr. Brian W. Shaughnessy, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before TAMM, LEVENTHAL and WILKEY, Circuit Judges.

WILKEY, Circuit Judge:

After a trial with a codefendant, who was acquitted by the District Court for lack of evidence, appellant pleaded guilty to three counts of robbery and three counts of assault with a dangerous weapon.[1] Appellant, age 19 at the time of trial, appeals not from the conviction but from the sentence of 4 to 12 years on the robbery counts and 3 to 9 years on the assault counts. Finding that appellant should have been sentenced under the Youth Corrections Act,[2] we remand for resentencing.

What happens to an offender after conviction is the least understood, the most fraught with irrational discrepancies, and the most in need of improvement of any phase in our criminal justice system. The statutory scheme for post-conviction handling of offenders establishes four categories: juveniles—under 18;[3] youth offenders—18 to 22;[4] young adult offenders—22 to 26;[5] and adult offenders. In the case of a young adult offender, the relevant statute states, " * * * *if* * * * *the court finds* that there is reasonable grounds to believe that the defendant will benefit from the treatment provided under the Federal Youth Corrections Act * * * *sentence may be imposed* pursuant to the provisions of such act."[6] The thrust of this provision is that an offender older than 22 years but less than 26 years is, as a general proposition, to be treated as an adult and sentenced pursuant to the statute under which he was convicted unless the court, in the exercise of its discretion, finds that he would benefit from the type of rehabilitative treatment normally available to younger offenders under the Youth Corrections Act.[7]

---

1. 22 D.C.Code § 2901; 22 D.C.Code § 502.

2. 18 U.S.C. § 5005 *et seq.*

3. 18 U.S.C. §§ 5031–5037.

4. 18 U.S.C. §§ 5001–5026.

5. 18 U.S.C. § 4209.

6. *Id.*

7. *See* S.Rep.No. 2013, 85th Cong., 2d Sess., 2 U.S.Code Cong. & Ad.News, pp. 3891, 3892 (1958), where the Committee on the Judiciary said the following with respect to the young adult sentencing provision:
   The proposed legislation also authorizes the court, *in exceptional cases* of defendants between the ages of 22 and

■ With respect to youth offenders, however, *i. e.*, "person[s] under the age of 22 years at the time of conviction," [8] the manner in which the District Court's discretion is to be exercised is substantially the converse of the scheme provided for young adults. Under the Youth Corrections Act, § 5010(d), the court must affirmatively find that the youth offender will *not* benefit from rehabilitative treatment before the offender can be sentenced as an adult pursuant to the statute governing the offense for which he was convicted.[9]

■ The Youth Corrections Act represents a determination by Congress that young persons who are convicted of crime have, as a general rule, a higher potential for being rehabilitated to become useful citizens than do older, more mature offenders. In the words of the House Committee that recommended passage of the Act:

The underlying theory of the [Act] is to substitute for retributive punishment methods of training and treatment designed to correct and prevent antisocial tendencies. It departs from the mere punitive idea of dealing with criminals and looks primarily to the objective idea of rehabilitation.[10]

These considerations do not, of course, prevent the trial judge from exercising his sound discretion to deny such rehabilitative treatment to those youths in the exceptional case where the judge determines that the special youth treatment afforded by the Act would be of no value. As the Senate Committee on the Judiciary stated in reporting favorably on the proposed Act,

If * * * the judge is convinced the youth is incorrigible and would

---

26 years at time of conviction, to sentence under the provisions of the Federal Youth Correction Act. At present the Youth Act may be applied only to convicted offenders under the age of 22, and the bill does not propose a general extension of this applicability. It contemplates that the Youth Act may be applicable to an offender in the slightly older age group *only when the court makes a special finding* that the defendant would benefit by the treatment methods prescribed by that act. (Emphasis added.)

8. 18 U.S.C. § 5006(e).

9. Section 5010(d) of the Act provides: *If the court shall find* that the youth offender will *not* derive benefit from treatment under subsection (b) or (c), *then the court may sentence* the youth offender under any other applicable penalty provision. (Emphasis added.)

10. H.R.Rep.No. 2979, 81st Cong., 2d Sess., 2 U.S.Code Cong.Serv., pp. 3983, 3985 (1950). The House Report further observed:

Sociologists and psychiatrists tell us that special causations which occur in the period between adolescence and manhood are, in a large measure, responsible for antisocial conduct trends manifested by persons in that age group.

Again, reliable statistics demonstrate, with reasonable certainty, that existing methods of treatment of criminally inclined youths are not solving the problem. A large percentage of those released from our reformatories and penal institutions return to antisocial conduct and ultimately become hardened criminals.

By herding youth with maturity, the novice with the sophisticate, the impressionable with the hardened, and by subjecting youth offenders to the evil influences of older criminals and their teaching of criminal techniques, without the inhibitions that come from normal contacts and counteracting prophylaxis, many of our penal institutions actively spread the infection of crime and foster, rather than check, it.

Most of the causes which contribute to antisocial conduct of youth offenders in the period between adolescence and maturity disappear when the youth reaches full maturity. The problem is to provide a successful method and means for treatment of young men between the ages of 16 and 22 who stand convicted in our Federal courts and are not fit subjects for supervised probation—a method and means that will effect rehabilitation and restore normality, rather than develop recidivists. (*Id.* at 3984–3985.)

derive no help from the program, he may sentence him under any applicable provision of law.[11]

Appellant here moved under Section 5010(e) for a presentence commitment for observation at a youth center in order that the court might secure "information as to whether a youth offender will derive benefit from treatment under subsections (b) or (c)." [12] The trial judge granted appellant's motion, and in his order required that the Lorton Youth Center report as to whether the appellant would benefit from treatment under Section 5010(b) or (c) of the Youth Corrections Act. Appellant at age 19 clearly fell within the youth offender classification of the Youth Corrections Act, this was his first felony conviction, it was believed that the kind of training available at the Youth Center would be helpful, and he had already been subjected to harassment by older prisoners, *i. e.*, a sexual assault in the District of Columbia Jail which appellant resisted, and in so doing sustained physical injuries forcing the postponement of his trial.

After appellant had been under observation at the Lorton Youth Center for the requisite sixty days, after receipt of the probation officer's report and the observations of the Youth Center, the District Court sentenced appellant under the regular statutes to 4 to 12 years for robbery and 3 to 9 years for assault, the sentences to run concurrently. At the same time, in imposing sentence the District Court *recommended* that the *appellant be placed in a youth institution.* Shortly thereafter appellant filed a motion for reconsideration of sentence, requesting that he be sentenced under the Youth Corrections Act. While this motion was pending, appellant was transferred from the Youth Center to the penitentiary, despite the District Court's recommendation for confinement in a youth institution. Six days after the trial judge took the motion under advisement appellant was severely beaten with a lead pipe by an older prisoner, hovered in critical condition for about two weeks, suffered permanent impairment of his eyesight, substantial amnesia, from all of which effects he is only partially recovered at the time of this appeal. Five months after the motion for reconsideration of sentence was made, the District Court denied it.

While the District Court does have discretion to sentence a 19-year-old "youth offender" under either the applicable statutory offense provision or the Youth Corrections Act, we believe that this discretion is circumscribed by the findings of fact in the individual case which the District Judge is required to make either explicitly or implicitly. Under Section 5010(b),[13] it is clear that the appellant is a "youth offender," and it is clear that the offense is punishable by imprisonment under other applicable provisions of law.[14] Therefore, the court *may* sentence under this subsection (b) or the following subsection (c),[15] both of which provide for rehabili-

---

11. S.Rep.No. 1180, 81st Cong., 1st Sess. 5 (1949).

12. 18 U.S.C. § 5010(e).

13. 18 U.S.C. § 5010 provides:
    (b) If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter until discharged by the Division as provided in section 5017(c) of this chapter.

14. These two facts are requisite findings permitting sentencing for rehabilitative treatment under subsections (b) or (c) of Section 5010. *See* Rogers v. United States, 326 F.2d 56 (10th Cir. 1963).

15. 18 U.S.C. § 5010(c) provides:
    (c) If the court shall find that the youth offender may not be able to derive maximum benefit from treatment by the Division prior to the expiration of six years from the date of conviction it may, in lieu of the penalty of imprisonment otherwise provided by

tative treatment in a youth institution. Or, alternatively, the court *may* sentence under the following subsection (d), *but only if* the applicable facts in the individual case meet the statutory requirements. Subsection (d) requires: *"If the court shall find* that the youth offender will *not* derive benefit from treatment under subsection (b) or (c), *then the court may sentence* the youth offender under any other applicable penalty provision."

The District Court here did sentence this youth offender under the penalty provisions of the statutes under which he was convicted, but the District Court here certainly did not find that the appellant youth offender would *not* derive benefit from treatment under the Youth Corrections Act. To the contrary, the District Court impliedly found that he would benefit from treatment under the Youth Corrections Act, because at the time he imposed sentence under the applicable statutes the court recommended that the appellant be placed in a youth institution. This direction of the court was only precatory, and was speedily violated by the transfer of appellant from the Youth Correction Center to the regular penitentiary.

■ It would appear that the District Court not only desired rehabilitative treatment for this particular youth offender, but also desired to impose a stringent penalty to serve as a deterrent to other potential offenders, therefore the 4 to 12 year sentence plus the recommendation for confinement in a youth institution.[16] However, the statutory scheme does not envisage this particular combination of rehabilitation and deterrence. It appears that once it is determined that the convicted person is a youth offender (ages 18 to 22), then Congress has decreed priority for the goal of rehabilitation.[17] The objective of deterrence may be taken into account by the trial judge, not by overriding the statute's rehabilitation provisions, but rather by combining them with a sentence exposing the defendant to a maximum term greater than that called for in subsection (b). This the trial court could have done by sentencing appellant under subsection (c), which authorizes the sentencing of the youth offender to the custody of the attorney general "for any further period that may be authorized by law for the offense or offenses of which he stands convicted or until discharged by the division as provided in Section 5017(d) of this chapter."[18]

law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter for any further period that may be authorized by law for the offense or offenses of which he stands convicted or until discharged by the Division as provided in section 5017(d) of this chapter.

16. It is also possible that the District Court wanted appellant to receive rehabilitative treatment but also felt that a fixed minimum time for such rehabilitation was necessary. If such a consideration motivated the court, it is clear that the sentence would be erroneous. The Act clearly commits to the Executive the determination of the *minimum* time period necessary to achieve rehabilitation. When the trial judge determines that rehabilitative treatment is desirable it is his responsibility to set the *maximum* duration of that treatment by sentencing under subsections (b) or (c). But the Act relieves the trial judge of the responsi-

bility of attempting to predict ahead of time, by setting a minimum sentence, how long the rehabilitative process will take. Instead, the correctional authorities are given the power conditionally or unconditionally to release the offender at any time within the maximum term of confinement when, in their judgment, based on the offender's actual progress and performance, rehabilitation has been accomplished.

17. This court, speaking through Judge (now Chief Justice) Burger, has recognized that "the basic theory of the Act is rehabilitative." Carter v. United States, 113 U.S.App.D.C. 123, 125, 306 F.2d 283, 285 (1962). *See also,* Cunningham v. United States, 256 F.2d 467, 471–472 (5th Cir. 1958); Brisco v. United States, 246 F.Supp. 818 (D.Del.1965).

18. The House Committee explained the purpose of subsection (c) as follows:
Under section 5010(c) of the bill, if the maximum term which may be im-

Only if the court found that the appellant youth offender would *not* derive benefit from rehabilitative treatment under the Youth Corrections Act did the District Court have discretion to sentence appellant under the regular adult statutory provision.

■ While the District Court is given discretion in regard to sentencing,

posed for the offense or offenses of which the youth offender stands convicted is more than 6 years, and the sentencing judge entertains doubt as to whether rehabilitation can be accomplished within 4 years, he may impose a greater maximum sentence but not greater than that authorized by law for the offense or offenses with which the

that discretion must be exercised in accordance with the intention of Congress underlying the statutory provisions analyzed in this opinion. The sentence will be vacated and the case remanded for that purpose.

So ordered.

youth offender stands convicted. This affords opportunity for the sentencing court to avail itself of the provisions of this bill and at the same time insure protection of the public if efforts at rehabilitation fail. (H.R.Rep.No. 2979, 81st Cong., 2d Sess., 2 U.S.Code Cong. Serv., pp. 3983, 3986 (1950).)