**The UNITED STATES of America**

**v.**

**Tyrone P. WATERS.**

**Crim. No. 322–68.**

United States District Court, District of Columbia.

Feb. 18, 1971.

Brian W. Shaughnessy, Asst. U. S. Atty., Washington, D. C., for the Government.

Eugene Threadgill, Washington, D. C., for defendant.

## MEMORANDUM

LEONARD P. WALSH, District Judge.

This matter comes before the Court on a remand for resentencing by the United States Court of Appeals for the District of Columbia.[1]

On April 25, 1969, this Court originally sentenced this defendant, who was at the time of his conviction both a youth offender under 18 U.S.C. §§ 5001–5026 (e. g., between the ages of 18 and 22), and "guilty of an offense punishable by imprisonment under other applicable provisions of law."[2] While these two requirements of eligibility for sentencing under the Federal Youth Corrections Act were thus met, the Court sentenced the defendant pursuant to the adult statutes governing the offenses for which he was convicted: to a period of from 4 to 12 years on each of three counts of robbery, to run concurrently; to a period of 3 to 9 years on each of three counts of assault with a dangerous weapon, to run concurrently with each other and also to run concurrently with the robbery counts. This Court further recommended that "serious consideration be given by the prison authorities that this defendant be confined in a youth institution."[3]

At the outset, this Court wishes to make one point clear. By recommending confinement of the defendant in a youth institution, this Court did not intend to make an implicit finding that this defendant would benefit from commitment under the Youth Corrections Act.[4] On the contrary, it was the opinion of this Court on April 29, 1969, and it is still the opinion of this Court, that defendant will not benefit from commitment under the Youth Corrections Act.

The Opinion of the Circuit Court states that under 5010(d) "the court must affirmatively find that the youth offender will *not* benefit from rehabilitative treatment before the offender can be sentenced as an adult pursuant to the statute governing the offense for which he was convicted."[5]

In order to dispel the apparent confusion caused by the sentences imposed and the recommendation of this Court at the original sentencing of the defendant, this Court affirmatively finds, after serious consideration,[6] that the defendant Tyrone P. Waters will *not* derive benefit from treatment under 5010(b) or 5010(c) of the Federal Youth Corrections Act.[7] This finding is based on an analysis of *all* data made available for this Court's inspection.[8]

---

1. United States v. Waters, 437 F.2d 722 (D.C.Cir., Nov. 17, 1970).

2. These two facts are requisite findings permitting sentencing for rehabilitative treatment under subsections (b) or (c) of Sec. 5010. See Rogers v. United States, 326 F.2d 56 (10th Cir. 1963).

3. Sentencing Transcript p. 4.

4. Recommendations of various natures have customarily been made by this Court in the past in order to achieve the goal of an individualized sentence.

5. United States v. Waters, *supra*, 437 F. 2d at 724.

6. Leach v. United States, 115 U.S.App. D.C. 351, 353, 320 F.2d 670, 672 (1963).

7. 18 U.S.C. § 5005 et seq.

8. See attached Appendix.

Prior to sentencing on April 25, 1969, this Court, as is its custom, studied the presence report [9] and such other information [10] as this Court deemed requisite to an arrival at the appropriate individualized sentence.

In this particular case, with its particular facts, this Court now commits the defendant Tyrone P. Waters to the custody of The Attorney General, or his designated representative, for confinement in an institution of his

9. Rule 32(c) (1) of the Federal Rules of Criminal Procedure requires that an investigation and report be made by the probation service of the court prior to sentencing "unless the Court otherwise directs." In United States v. Spadoni, 435 F.2d 448 at 449 (Nov. 5, 1970), this Circuit stated in regard to this rule:

> "Indeed, in applying this rule, we have appeared to go beyond the other circuits in adopting a restrictive view of the trial judge's discretion to impose sentence without taking advantage of presentencing procedures. We have yet to sanction the denial of an investigation in any case in which the defendant has desired it."

This Court on November 30, 1970, held a hearing (see attached transcript) in order to incorporate the presence report and all other data of the court into the record. As this Circuit stated in United States v. Delaney, 442 F.2d 120 at 122 (D.C.Cir., Order filed June 9, 1970):

> "In most cases, an appellate court has no occasion to inspect a probation officer's report as a matter included in the appellate record. But where, as in this case, * * * questions are raised concerning the reasons for which a sentence was imposed, it may become necessary for the presence report to be made a part of the record in this Court, to enable us to express a considered opinion on the appellant's contentions. Whether or not the reports are made available to counsel for the parties, they must be before us *in camera* if we are to 'scrutinize the sentencing process to insure that the trial judge has considered the information available with some regard for its reliability, and has evaluated the information in light of the factors relevant to sentencing'", quoting Scott v. United States, 135 U.S.App.D.C. 377, 419 F.2d 264, 266 (1969).

At the hearing on November 30, 1970, this Court, exercising its discretion in this individual case, see United States v. Bryant, 442 F.2d 775 at 778 (D.C.Cir., Feb. 4, 1971), made full disclosure of the presence report to the defense counsel. In addition, the court encouraged both counsel, as well as defendant, to inspect the report and comment for the record as to disagreement with, or implementation to any portion thereof. Counsel and defendant did reply (hearing record at 19, 20, 21).

The probation officer's recommendation stated:

> "Probation is not recommended. Age wise, defendant Waters is eligible for a Youth Correction Act commitment but due to his past performance in and out of custody, we do not feel that he is the type of inmate this Act was established for. Due to his past escapes, attempted escape, and assault on fellow inmates, we are recommending that he be committed to a federal maximum security type institution."

10. The court desiring "additional information as to whether a youth offender will derive benefit from treatment under subsections (b) or (c)," 18 U.S.C. § 5010 (e), exercised its discretion by ordering the defendant to be committed to The Attorney General for observation and study at the Youth Center for 60 days. Of the three evaluations, two recommended that Waters be returned to the Youth Center. The third characterized Waters as

> "an extremely hostile youth who will be quite resistive to the Youth Center's program and would present a problem to the Youth Center staff both from an internal security point of view and from an escape risk point of view. Mr. Water's disciplinary record here at the Youth Center has been excellent in marked contrast with his prior institutional history and most recent history at the D. C. Jail where he was extremely assaultive. This writer is of the opinion that Mr. Waters is on his best behavior in an effort to secure a recommendation for a Youth Corrections Act sentence as opposed to an adult sentence. It is felt that once he is sentenced as a youth his behavior will deteriorate and his progress and growth at the Youth Center would thereby suffer.

> "This writer is of the opinion that Mr. Water's needs cannot be adequately met in the relatively loosely structured setting of the Youth Center."

designation, on the robbery counts 1, 3 and 5, for a period of from 2 to 6 years to run concurrently; and on counts 2, 4, and 5, assault with a dangerous weapon, for a period of from 2 to 6 years, to run concurrently, and to run concurrently with the sentences imposed on counts 1, 3 and 5; and also to run concurrently with any other sentence now being served.

This Court is cognizant of the Congressional scheme as concerns youth offenders, and is, therefore, appreciative of the difficulties begotten by the incorrect combination of an adult sentence and a recommendation as to a youth institution, which, legally if not logically, precluded the required affirmative finding that the defendant would not benefit from treatment under 5010(b) or (c). However, the Court wishes to express its deep concern over another aspect of the Circuit's opinion in this case.

On page 725 of the opinion, 437 F.2d, it is said "Appellant here moved under Section 5010(e) for a presentence commitment for observation at a youth center in order that the court might secure 'information as to whether a youth offender will derive benefit from treatment under subsections (b) or (c).'" This *incomplete* citation from the Code would seem to restrict the trial judge *solely* to the 5010(e) evaluative summary when considering whether a defendant will benefit from a Youth Act commitment. In other words, if the report recommends Youth Act commitment the trial judge is bound by law to follow that recommendation. However invalid, the possibility of such an interpretation of 5010(e) has caused much consternation in this Court. Unlike the opinion, the statute clearly reads,

> "If the court desires *additional* information as to whether a youth offender will derive benefit from treatment under subsections (b) or (c), it *may* order that he be committed to the custody of the Attorney General for observation and study at an appropriate classification center or agency. Within sixty days from the date of such order, or such additional period as the court may grant, the Division shall report to the court its findings." [11] (emphasis added).

The 5010(e) report, then, while of obvious importance due to the presumed particular expertise of those who compose it, is not to be the sole consideration [12] of the trial judge before he performs his awesome duty [13] through pronouncement of sentence. The presentence report also holds a prominent place in this decision making process.[14] And the court ultimately must determine the appropriate individualized sentence not by a mere quantitative accounting process [15], but by a careful qualitative analysis of *all* data presented to it.

---

11. 18 U.S.C. § 5010(e).

12. In Scott v. United States, 135 U.S.App. D.C. 377, 379, 419 F.2d 264, 266, this circuit held that "The trial judge has wide freedom in the information that may be considered in imposing a sentence. The result, the specific sentence selected, may be beyond the ken of the appellate court."

13. "A trial court is faced with no more difficult task than imposing sentence. If the sentence is within the latitude granted by statute and is imposed in a procedurally correct manner, the court has a well-nigh unreviewable discretion. The heavy burden on the court is a reflection of the importance of the sentence to the public interest as well as to the defend-

ant who is most directly affected." United States v. Bryant, *supra.*

14. See Note 9, *supra.*

15. For example, the 5010(e) report, see Note 10, *supra*, was a 2 to 1 finding that the defendant Waters would benefit from confinement at the Lorton Youth Center. The third writer, as reported *supra* at N. 10, found to the contrary.

The Board of Parole in a one page letter agreed with the two evaluators who felt that Waters should be returned to the Youth Center.

The Probation officer at the end of a lengthy presentence report recommended that Waters should be sentenced under the adult statute to a maximum term in a maximum security penitentiary.

It is significant to note that throughout the Opinion the Appellate Court repeatedly refers to the discretion of the trial judge:

1. "These considerations do not, of course, prevent the trial judge from exercising his sound discretion to deny such rehabilitative treatment * * *". *Waters*, 437 F.2d at 724.

2. "If * * * the judge is convinced the youth is incorrigible and would derive no help from the program, he may sentence him under any applicable provision of law." *Waters*, at 724–725.

3. "While the District Court does have discretion to sentence a 19-year old 'youth offender' under either the applicable statutory offense provision or the Youth Corrections Act, * * *". *Waters*, at 725.

4. "Therefore, the court *may* sentence under this subsection (b) or the following subsection (c), both of which provide for rehabilitative treatment in a youth institution. Or, alternatively, the court *may* sentence under the following subsection (d), *but only if* the applicable facts in the individual case meet the statutory requirements. Subsection (d) requires: '*If the court shall find* that the youth offender will *not* derive benefit from treatment under subsection (b) or (c), *then the court. may sentence* the youth offender under any other applicable penalty provision.'" *Waters*, at 725–726.

5. "Only if the court found that the appellant youth offender would *not* derive benefit from rehabilitative treatment under the Youth Corrections Act did the District Court have discretion to sentence appellant under the regular adult statutory provision." *Waters*, at 727.

6. "While the District Court is given discretion in regard to sentencing, * * *". *Waters*, at 727.

Of course this discretion is "circumscribed by the findings of fact in the individual case which the District Judge is required to make either explicitly or implicitly." [16] Nonetheless such frequent mention of this awful discretion remains heartening to the trial judge.

That protection of the community is also an avowed purpose of the Act [17] was articulated by the Congress at its incep-

Playing the numbers game there would, of course, be three sources favoring Waters' return to the Youth Center and only two opposing it. Yet, certainly this is not the manner in which the trial judge can sustain his awful burden in the due exercise of his discretion. Poll takers have no discretion. It is neither the staff of the Youth Center nor that of the probation office in whom such discretion and responsibility is vested by law; it is the trial judge alone in whom such power lies by order of the Congress.

Incidentally, in the presentence data gathered prior to Waters' sentencing for a later armed robbery the 5010(c) report, while maintaining its numerical two to one edge favoring Waters' return to the Youth Center, was different. Now the psychiatric report determined that Waters would not benefit if returned to the Lorton Youth Center.

The Parole Board reversed its prior position after Waters' conviction before Judge Bryant and recommended that he not be returned to the Youth Center, but that he be sentenced under the adult statute.

The probation report remained unchanged in its conclusions.

Hence, there was at this time a three to two edge in favor of sentencing Waters under the adult statute governing the offense for which he was convicted.

16. *Waters*, supra, at 725.

That the Federal Youth Corrections Act was not intended to "deprive the court of any of its present functionings as to sentencing" was indicated in a letter from the then Deputy Attorney General Peyton Ford to the Chairman of the House Committee on the Judiciary, Emmanuel Celler, as recorded in H.R. Rep.No.2979, 81st Cong., 2d Sess., 2 U. S.Code Cong.Serv. pp. 3983, 3991 (1950).

17. 18 U.S.C. § 5005 et seq.

tion [18] and recognized much more recently by this Circuit.[19]

Insofar as the Federal Youth Corrections Act provided procedures that marked a fundamental reorientation toward the problem of the youth offender, it is a vanguard project [20] filled with all the hopes and fraught with all the pitfalls of such enterprises. Such an enlightened program as presented by this Act would indeed be threatened, as this Court believes the appellate court recognizes, from within and consequently from without by absorption into its workings of all those who are strictly eligible for sentencing under the Youth Corrections Act by merely meeting the 5010(b) requirements. Judicial disregard for both the nature of the offense as well as the number of commissions [21] would at once pervert the pronounced legislative intent of the Act and imperil the community for whose protection such legislation was also enacted.[22] The dual ends sought to be achieved by this noble effort would thus be stymied.

## APPENDIX

This section includes all data upon which this Court made its decision in this case, as well as certain material acquired after April 25, 1969, which is included to amplify the record in this particular case.[i]

I. Copy of Presentence Report dated March 14, 1969, to Judge Walsh in Case No. 322–68. (This same report was later submitted to Judge Bryant for consideration in Case No. 99–69).

II. Copy of letter from the Board of Parole to Judge Walsh dated April 8, 1969, with attached report from the Youth Center.

III. Copy of letter from the Board of Parole to Judge Bryant dated July 14, 1970, with attached report from the Youth Center.

IV. Transcript of Proceedings before Judge Walsh on November 30, 1970.

V. Memorandum from George W. Howard, Chief U. S. Probation Officer, dated December 21, 1970, and attached Progress Report from the Youth Center.

VI. Motion for Recommitment to St. Elizabeth's Hospital filed January 18, 1971. (Hearing pending).

18. "Judges must ever keep in mind the public safety, * * * ". S.Rep.No.1180, 81st Cong., 1 Sess. 5 (1949). That a fundamental purpose of the Act is "to stem and reverse the alarmingly increasing trend of criminal activity in the United States" is explicitly set out in H.R. Rep.No.2979, 81st Cong., 2d Sess., 2 U.S. Code Cong.Serv. p. 3983 (1950).

19. United States v. Harvin, No. 22,317 (D.C.Cir., Oct. 13, 1970), slip opinion at 44 (rehearing en banc granted Dec. 11, 1970).

20. In this respect the Federal Youth Corrections Act may be compared with the Narcotic Addict Rehabilitation Act. Both mark fundamental reorientation towards different problems. In connection with NARA as such a vanguard project, *see* U.S.Code Cong. & Admin.News, pp. 4245, 4249 (1966).

21. Under the D. C. Court Reform and Criminal Procedure Act of 1970 (Public Law 91–358; 84 Stat. 473), Title II, Section 205, one who has been convicted more than once of having committed a crime of violence in the District of Columbia, is, despite his youth offender age status, ineligible for Youth Corrections Act consideration (effective February 1, 1971). This is the latest display of Congressional intent concerning the Youth Corrections Act. Clearly Congress has, in its wisdom, determined that classification as a youth offender shall not be a carte blanche into the Lorton Youth Center.

22. See notes 17, 18, 20, *supra*.

i. In addition, the official court file in Case No. 322–68, was available to this Court.