**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Patrick MARRON,
Defendant-Appellant.**

**No. 77–1682.**

United States Court of Appeals,
Ninth Circuit.

Nov. 14, 1977.

Randi Wood, Missoula, Mont., for defendant-appellant.

Robert L. Zimmerman, Asst. U. S. Atty., Billings, Mont., for plaintiff-appellee.

Before CARTER and TRASK, Circuit Judges, and BURNS,[*] District Judge.

JAMES M. CARTER, Circuit Judge:

The appeal raises the questions (1) whether a district court may legally sentence a 20-year-old youth offender to a split sentence of time and probation to follow, under 18 U.S.C. §§ 3651 and 5010(b); and (2) if not, whether the district court may revoke the probation and sentence to custody. We hold the probation sentence was illegal, but the district court could revoke probation and legally sentence the defendant under § 5010(b). We affirm.

Defendant pled guilty to a charge of making and forging an endorsement of a check payable solely from funds of the United States, in violation of 18 U.S.C. § 495. The court, on April 2, 1976, found the defendant was 20 years of age and was "suitable for handling under the Federal Youth Corrections Act (Y.C.A.), 18 U.S.C. §§ 5005–24, as a young adult offender."[1] The court then sentenced the defendant to the custody of the Attorney General "for imprisonment *for a term of three (3) years;* and pursuant to 18 U.S.C. § 3651, on condition that the defendant be confined in . . a jail-type institution for a period of thirty days," consisting of 48-hour weekends, "the execution of the remainder of the sentence of imprisonment is hereby suspended and the defendant thereafter is to be released and placed on probation for the balance of the term of sentence, upon the following terms and conditions: (1) that he obey all federal, state and local law . . . ."

On February 16, 1977, an order was filed directing that a warrant issue for violation of the terms of probation on the ground that defendant had been found guilty in the Police Court of Billings, Montana, on February 3, 1977, of driving a vehicle while intoxicated (D.W.I.). The Police Court record showed that defendant had asked for an attorney to be appointed for him, but the court advised him that the penalty was a fine and no jail term and that accordingly the court would not appoint an attorney.

The district court found the defendant had violated the terms of his probation and on March 3, 1977, revoked probation, found the defendant suitable for handling under the Y.C.A., and that there were reasonable grounds to believe that the defendant could benefit from treatment under the Y.C.A. The court then adjudged:

"that the defendant is hereby committed to the custody of the Attorney General . . . for treatment and supervision pursuant to 18 U.S.C. § 5010(b) until discharged . . . as provided in 18 U.S.C. § 5017."

On the appeal the defendant claims (1) the revocation was improper since he was

---

* Honorable James M. Burns, United States District Judge, District of Oregon, sitting by designation.

1. 18 U.S.C. § 5006 defines a person under the age of twenty-two at the time of conviction as a "Youth offender." A young adult offender, the term used by the court, was defined in 18 U.S.C. § 4209 as "a defendant who has attained his twenty-second birthday but has not attained his twenty-sixth birthday at the time of conviction . . . ."

Section 4209 became effective August 25, 1958, but was repealed on March 15, 1976, Public Law 94–233, ¶ 2, 90 Stat. 225. The repeal was effective on the sixtieth day following March 15, 1976 (see ¶ 16(b) of P.L. 94–233). The old section was in effect on April 2, 1976, the date of the first sentencing herein.

The same law in ¶ 2 enacted 18 U.S.C. § 4216 in language substantially similar to old § 4209.

entitled to counsel at the hearing; (2) that the first sentence imposed on April 2, 1976, was illegal and therefore the revocation and resentencing was improper, and (3) that on remand the court be required to ignore the Police Court conviction and sentence defendant to probation under the Y.C.A.

The government agrees that the case must be returned to the district court for resentencing since the defendant "can only be required to serve the sentence originally imposed or a lesser sentence (18 U.S.C. § 3653)," relying on the following language in that section:

> ". . . the court may revoke the probation and require him to serve the sentence imposed, or any lesser sentence . . . ."

Both parties have first set forth in their briefs their views on whether lack of counsel in the Police Court voided that misdemeanor conviction. Then they discuss the revocation. Both agree there must be a remand for resentencing.

The parties have approached the problem backwards. We think the first sentence was illegal, but the resentencing was proper. Because the resentencing is independently valid, we do not reach the problem of the validity of the Police Court conviction.

### The First Sentence Was Illegal

■ In the first sentencing on April 2, 1976, after finding the defendant was 20 years of age and suitable for handling under the Y.C.A. as a young adult offender,[2] the court applied the split sentence provision of 18 U.S.C. § 3651 (i. e., imposed an adult sentence of three years), suspended its execution, and placed defendant on probation on condition he serve thirty days in a jail-type institution. This is a typical sentence for an adult, but is not proper under Y.C.A. for a youth offender.

This circuit has several opinions on sentencing under the Y.C.A. In Cherry v.

United States, 299 F.2d 325, 326 (9 Cir. 1962), we stated that 18 U.S.C. § 5010 ". . . gives a judge three choices at the time for sentencing a youth offender. He may place the latter on probation (§ 5010(a)), sentence him to the custody of the Attorney General for treatment and supervision, (§§ 5010(b), (c)), or sentence him as an adult (§ 5010(d))."

In United States v. Hayes, 474 F.2d 965, 967 (9 Cir. 1973) we quoted the above statement in Cherry and added:

> "There is certainly nothing to indicate that the judge may select any combination thereof. The Federal Youth Corrections Act is an alternative sentencing provision. At the discretion of the judge a youth offender deemed treatable under the Act can be sentenced to treatment rather than punishment under the applicable penalty provision provided by law. A combination of rehabilitative treatment and retributive punishment is not intended and is improper. See United States v. Waters, 141 U.S.App.D.C. 289, 437 F.2d 722, 726 (1970).
>
> "We conclude that a judge electing to commit a youth offender for treatment and supervision under the alternative sentencing provisions of the Federal Youth Corrections Act is foreclosed from imposing an additional punitive penalty under another provision.
>
> "The convictions are affirmed but the fines imposed are vacated."

Hayes held that a sentence for treatment and supervision under 18 U.S.C. § 5010(b) could not also impose a fine. Accord, Cramer v. Wise, 501 F.2d 959 (5 Cir. 1974). A probationary sentence under the Y.C.A., 18 U.S.C. § 5010(a), may not condition probation upon payment of a fine and restitution of embezzled money. United States v. Bowens, 514 F.2d 440 (9 Cir. 1975). But in United States v. Hix, 545 F.2d 1247 (9 Cir. 1976), the court upheld a 5010(a) sentence coupled with a probationary condition of

---

**2.** The use of the words "young *adult* offender" was obviously merely a mistake and would not affect the validity of the sentence if otherwise good. To be a young adult offender under 18

U.S.C. § 4209 (now § 4216), the defendant would have to be over 22 and under 26 years of age at the time of the commission of the offense.

restitution. The court distinguished *Bowens*, stating the fine made the sentence illegal in that case.

Restitution was held proper under a Y.C.A. probationary sentence in *United States v. Buechler*, 557 F.2d 1002 (3 Cir. 1977), and *Durst v. United States*, 549 F.2d 799 (4 Cir. 1976). *Certiorari* in *Durst* was granted by the Supreme Court, 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 772. A decision late in 1977 or in 1978 may give considerable help on the problem.

A fine coupled with a probationary sentence under 5010(a) was held proper in *United States v. Prianos*, 403 F.Supp. 766 (N.D.Ill.1975). In *United States v. Oliver*, 546 F.2d 1096 (4 Cir. 1976) the sentence was imposed under 18 U.S.C. § 5010(b), the execution of the sentence was suspended, defendant was placed on probation under 18 U.S.C. § 5010(a) and was fined $1,500.00. The sentence was upheld on appeal.

In the case of a young adult offender (18 U.S.C. § 4209), sentenced to treatment and supervision under 18 U.S.C. § 5010(b), a special parole term under 21 U.S.C. § 841 may not be added to the sentence. *United States v. Coleman*, 414 F.Supp. 961 (D.Md. 1976). However, after a defendant was sentenced as an adult and then probation was revoked, on resentencing he could be lawfully sentenced under 18 U.S.C. § 5010(b), *Cherry v. United States, supra; Young Hee Choy v. United States*, 322 F.2d 64 (9 Cir. 1963); *United States v. Bailey*, 343 F.Supp. 76 (W.D.Mo.1971).

*United States v. Mollet*, 510 F.2d 625, 626 (9 Cir. 1975), appears to control our case. One defendant, Yamron,[3] "was fined $5,000, and committed for supervision under 18 U.S.C. § 5010(b) and sentenced to 6 months, plus 5 years probation," a typical split sentence. The court cited *United States v. Hayes, supra*, as controlling, holding that the Y.C.A. "forecloses the imposition of retributive punishment under other provisions of the Act, including the imposition of a fine (and, we would assume, imprisonment)." Yamron's conviction was affirmed but the sentence was vacated and the case remanded for resentencing.[4]

We hold that the first sentence imposed was illegal. The court found the defendant was a youth offender and suitable for handling under the Y.C.A. Obviously the court thought it was proceeding under the Act. It then imposed a split sentence—a term for three years suspended and probation granted on condition that defendant serve 30 days in a jail-type institution. This amounted to imposition of retributive punishment, which is not permitted under the Y.C.A.

### The Revocation of Probation and the Resentence

A hearing was held before the district court. The defendant was represented by counsel. There was received in evidence the conviction of D.W.I. in the Police Court. But the hearing did not stop at that. The defendant was called as a witness by his own attorney. When asked how much he had to drink he replied, "I had two beers at a friend's house and then I went to the Cockpit. It's a beer joint in Billings and I had about a glass and a half of beer but I was taking medication at the time . . . Darvon compound 65 under the doctor's prescription." He also testified, ". . .

---

**3.** Mollet and Moxley, the other two defendants in the *Mollet* case, were fined and imposition of sentence of imprisonment suspended under § 5010(a), with five years probation. The court also affirmed their convictions and vacated each sentence and remanded each for resentencing. We do not think it affects the holding of the case, but in *Hayes*, the case relied on, each defendant had been sentenced for treatment and supervision under 18 U.S.C. § 5010(b) and each had been fined. *The circuit affirmed the convictions but the fines were vacated.* It

would seem that only the fine as to Mollet and Moxley needed to be vacated.

**4.** A contrary result was reached in *United States v. Borawski*, 297 F.Supp. 198 (E.D.N.Y. 1969). There the defendant was sentenced to three years imprisonment and, pursuant to 18 U.S.C. § 3651 and § 5010(a) (of the Y.C.A.), was ordered to serve six months, and the remainder of the sentence was suspended and he was placed on probation. The district court, on a motion to correct an alleged illegal sentence, upheld it.

When I got picked up for D.W.I. I was supposed to take one of those capsules every four hours, but I had taken two because of my head. That is why I drank beer too, because my head was feeling bad from that . . . so I took two in four hours then I drank some beer." He also admitted associating with Gary Kimball, an ex-convict; that Vance, his probation officer, warned him to stay away from Kimball, but he was riding in Kimball's truck once after that. Kimball was arrested for D.W.I. at the same time the defendant was arrested. The defendant was also at a store at an earlier date when Kimball was arrested for shoplifting, and he and Kimball were together when they were arrested by U.S. marshals.

The court submitted the matter and on March 3, 1977, stated: "It is the judgment of the court that the facts set forth in the petition are true, *that there was a violation of the probation order in this case*, and that probation should be revoked." (Emphasis added)

■ "Probation may be revoked when the judge is reasonably satisfied that a state or federal law has been violated, and conviction is not a prerequisite." *United States v. Carrion*, 457 F.2d 808 at 809 (9 Cir. 1972). Thus even if the conviction in the Police Court of Billings is invalid, it is obvious from the transcript of the revocations hearings that there were sufficient facts offered and that the finding of violation of probation could be based on those facts without consideration of the Police Court conviction.

Although an interesting question is raised under *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) because of the fact that the conviction (which carried a fine only) might have been or actually was used for the revocation of the defendant's probation in the federal court, we do not reach the issue.

■ After revoking probation, the district court then found the defendant suitable for treatment as a youth offender and sentenced him under 18 U.S.C. § 5010(b) to the custody of the Attorney General. Although the original sentence with the grant of probation was invalid, the district court had the right to act and to resentence the defendant under the holding of *Pollard v. United States*, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957). There a defendant had been placed on probation after he had left the courtroom. Upon violation of the terms of the probation he was sentenced to two years in prison. *United States v. Kenyon*, 519 F.2d 1229 at 1232 (9 Cir. 1975) summarized the *Pollard* holding as follows. Although "the initial probation [was] invalid, such an invalid probation could still be 'revoked' and replaced with a custodial term."

Under these authorities there was no need to remand the case for resentencing. The judgment of resentencing is affirmed.[5]

5. The Federal Youth Corrections Act (Y.C.A.) became effective on September 30, 1950. The writer had been appointed to the district court in the fall of 1949 and, after the passage of the Y.C.A., used the statutes for 17 years, until he was appointed to the circuit in 1967.

He was always of the opinion that the statutory scheme in the Y.C.A., 18 U.S.C. § 5005, *et seq.*, was a scheme unto itself and was operative without resort to the various other sections involving sentencing of adults. There is much to be said that district judges should be given great flexibility in sentencing tools and procedures, and some of the cases cited in this opinion where fines or restitution have been upheld under Y.C.A. sentencing speak of this need. However, the Y.C.A. in itself is immensely flexible in its statutory scheme, and it is difficult to imagine situations where a result desired by a judge cannot be achieved under the Y.C.A. provisions.

It is true that fine and restitution are two of the situations which are not provided for in the Act. In this circuit, as shown above, restitution provisions have been held proper, but not so as to fines.

Often the court decides it needs a study to be made of the defendant before finally sentencing him, and accordingly sentences the defendant for a 60-day study under 18 U.S.C. § 5010(e). After the study the court has all its original options available.

As between the alternatives of mixing together the Y.C.A. procedures and the adult procedures for sentencing on the one hand, and confining the sentencing of youth offenders and young adult offenders to the procedures outlined under the Act and the cases on the other hand, the writer would choose the latter as

BURNS, District Judge, dissenting:

While I must agree with the majority that the sentence first imposed was illegal, I wish to comment on the line of Youth Corrections Act (YCA) cases, *Hayes, Mollet,* and *Bowens,* which compel that conclusion. And I dissent from the court's subsequent disposition of the case for the reasons indicated.

## I.

In *United States v. Hayes,* 474 F.2d 965 (9th Cir. 1973), this court held that where a young offender is committed to the custody of the Attorney General for treatment and supervision under 18 U.S.C. § 5010(b), the commitment can not be coupled with a fine. The court's interpretation of the UCA on that narrow issue seems to me to be at least arguably correct, even if it is not necessarily compelled by a reading of the statute.[1] The opinion, however, laid down a broader rule which I believe to be unfortunate, to the effect that under the Act "a combination of rehabilitative treatment and retributive punishment is not intended and is improper.[2]

The next in this line of cases was *United States v. Mollet,* 510 F.2d 625 (9th Cir. 1975). There, one defendant had been fined and committed to custody under § 5010(b), but in effect given a split sentence: he was to serve six months and then be placed on probation for five years (a typical sentence

under 18 U.S.C. § 3651). The other two defendants had been fined and placed on probation under § 5010(a), with imposition of their sentences suspended. The opinion does not make it clear whether the sentencing judge specified that payment of a fine was to be a condition of the probation. *See* § 3651.

*Mollet* determined that the sentencing court could not commit to custody under § 5010(b) and impose a fine (following *Hayes*); nor, by extension, could it commit to custody and impose any sentence containing any specified lesser term of imprisonment (such as a split sentence), because this would be "retributive" rather than "rehabilitative." Finally, *Mollet* held that the court could not even place a defendant on probation under § 5010(a) and impose a fine. *Mollet* reached this last result even though, in *Cherry v. U. S.,* 299 F.2d 325 (9th Cir. 1962), this court stated that "probation as used in § 5010(a) means probation as defined in § 3651 and 3653; " *id.* at 326, and § 3651 specifically provides that payment of a fine may be a condition of probation. *Mollet* also reached this result even though Congress provided, in passing the YCA, that

"[N]othing in this chapter [the YCA] shall limit or affect the power of any court to suspend the imposition or execution of *any* sentence and place a youth

---

being more orderly, more understandable, adequate in supplying various alternatives, and as furthering the general purpose of the Act to differentiate between the sentencing of adults and youth offenders.

1. Section 5010(b) speaks of sentencing a youthful defendant to the custody of the Attorney General "*in lieu of the penalty of imprisonment* otherwise provided by law." (Emphasis added.) Just as "[t]here is no indication that Congress intended by such language to make fines permissible in conjunction with a sentence committing a youth offender for rehabilitative treatment," *Hayes, supra* at 967, there is no indication of an opposite intention, either. In fact, a defendant who is set at liberty on condition that he pay a fine is not forced to associate with hardened convicts likely to corrupt him, which was a major factor in Congress' opposition to the mere punishment of young offenders.

2. I have two quarrels with this bit of dictum.

First, to support it the court cites a decision from the D.C. Circuit, *United States v. Waters,* 141 U.S.App.D.C. 289, 437 F.2d 722 (1970), which hardly stands for the proposition offered, namely, that rehabilitation is exclusive of retribution. *Waters* concerned only the attempt by a sentencing judge to impose a minimum period of commitment under § 5010(b), and held that "the statutory scheme *does not envisage this particular combination of rehabilitation and deterrence.*" Id. 141 U.S.App.D.C. at 293, 437 F.2d at 726. (Emphasis added.)

Second, the statement conveys an erroneous impression of analytic truth, as if the end of rehabilitation necessarily precludes the achievement of other penal goals. *See* text, *infra.*

offender on probation or be construed in any wise to amend, repeal, or affect the provisions of chapter 231 of this title [The Probation Chapter, §§ 3651–56] . ." (Emphasis added.) 18 U.S.C. § 5023(a). Thus, the *Mollet* panel went far beyond the holding in *Hayes* and decided, in effect, that sentencing judges may not impose any form of "retributive punishment" under any part of § 5010 except § 5010(d).[3]

But my disagreement with *Hayes* and *Mollet*[4] runs deeper than their reflexive banishment of retribution from the sentencing arena in the name of rehabilitation.[5] Rehabilitation and retribution are only two of the accepted goals of sentencing. Other goals include removal of dangerous offenders from society (separation), reparation for the harm done to the victim (restitution), and dissuasion of the defendant from repeating and others from committing similar acts (deterrence). These other purposes are by no means inconsistent with rehabilitation, as happily this court has recently recognized, at least in part. *See United States v. Hix,* 545 F.2d 1247 (9th Cir. 1976) (restitution to the victim compatible with rehabilitation of the defendant under the YCA); *cf. United States v. Buechler,* 557 F.2d 1002 (3d Cir. 1977). *Hayes* and its progeny have threatened to make rehabilitation the *exclusive* purpose of a YCA sentence. A better reading of the YCA, it seems to me, is to say that any and all penal objectives may

be pursued in sentencing under its provisions, so long as the means chosen to satisfy these objectives do not substantially detract from the *primary* goal of rehabilitation.[6]

As for rehabilitation, it is extremely doubtful that two of the chosen means of the Act—§§ 5010(b) and 5010(c)—any longer serve their purpose, if they ever did. Many, if not most, of the youths committed to custody under § 5010(b) are in exactly the same institutions, and under precisely the same conditions, as adults who have been imprisoned, regardless of whether the principal aim of the sentencing judge was deterrence, separation, retribution, or rehabilitation. We do not need scholars to tell us that rehabilitation is an uncommon product of incarceration in such large fortresses. An imaginatively designed probation sentence will usually be far more rehabilitative to a young offender than confinement for possibly[7] four years under § 5010(b) or eight years under § 5010(c). To say that a fine or a short jail sentence imposed as a condition of probation is punitive and retributive in comparison to youth offender commitment, which is "rehabilitative," strikes me as jurisprudence by label and the height of unrealism.

The *Hayes* line of cases stands for the proposition that up to four years of total confinement in a federal prison is "rehabilitative," so long as we order it for a youth

---

**3.** Under § 5010(d), the court may reject the alternative commitment procedures of the Act and sentence the defendant as an adult. The adult provisions, e. g., 18 U.S.C. § 4205, of course do not rule out retribution as a consideration in sentencing.

**4.** The last in this line of cases, *United States v. Bowens,* 514 F.2d 440 (9th Cir. 1975), adds nothing to the holding of *Mollet* since its modification by *United States v. Hix, infra,* and therefore needs no separate discussion.

**5.** The two ends are not logically antithetical. The most one can say is that rehabilitation may be difficult or even impossible, as a practical matter, when certain methods of exacting retribution are chosen, e. g., confinement for a lengthy period in a large central prison.

**6.** The Report of the House Judiciary Committee said of the YCA that the bill

". . . departs from the *mere* punitive idea of dealing with criminals and looks *primarily* to the objective idea of rehabilitation." (Emphasis supplied.)
1950 U.S.Code Cong.Serv. 3985.

**7.** Under the theory advanced by the panel, if the Court, on revocation, was entitled to sentence to an indeterminate commitment under § 5010(b), I see no reason why the Court could not, under § 5010(c), if it found that the defendant "may not be able to derive maximum benefit from treatment" under § 5010(b), sentence the defendant to any term authorized by the statute which defendant had violated. In this case, 18 U.S.C. § 495 carries a ten year maximum. Hence, this defendant, who thought he was getting a maximum of three years at the original sentence, stands under the result achieved, to serve a maximum of four years (§§ 5010(b) and 5017) or eight years (§§ 5010(c) and 5017).

under 22 (or for that matter, a young adult under 26), but a fine or 30 days in jail or a community treatment center as a condition of probation is "punitive." [8] I dare say that few, if any, of the youths who spend time in Lompoc would agree with this distinction.[9] I dare say that few of the Bureau of Prison employees who keep them there would either.[10]

I am compelled by precedent to agree with my colleagues that the original sentence in this case cannot stand. However, I think the result illustrates the truth of Justice Frankfurter's quip: "If you give bad dogma a good name, its bite will be worse than its bark." I nurture a hope this circuit may see fit to take this case, or a similar one, en banc. This would provide a chance for a thorough study of the rationale of *Hayes* and *Mollet* and *Bowens*, and perhaps produce a more balanced interpretation of the Youth Corrections Act.

## II.

My colleagues would uphold the new sentence imposed. But, even if it is proper for an appellate court to conceive its own grounds for the revocation of probation, and by this device to affirm the sentence of a revoking judge,[11] the particular sentence here meted out cannot stand. Marron was originally sentenced to three years' imprisonment, execution of the remainder to be suspended on condition that he serve one month of this term in jail. Now, under 18 U.S.C. §§ 5010(b) and 5017(c), he faces the

---

**8.** There is perhaps an intimation in footnote 5 of the majority opinion that when a court desires to have the defendant spend a short time in custody, it can use the study provisions of § 5010(e) to hold him for up to 60 days. Such a procedure would use a statutory disposition designed for one purpose for a wholly different one; more seriously, it would subvert the purpose of § 5010(e), because it would mean that the sentencing judge has at least partially decided the disposition question for which the defendant was being committed. I understand that in at least one district in this circuit, judges have got around *Hayes* and *Mollet* by the similar expedient of initially rejecting the Act; imposing a split sentence; and then, after the short jail term has been served, modifying the sentence under Rule 35, Fed.R.Cr.P., to one of probation under § 5010(a). I do not think that judges should be forced to be "corner cutters."

**9.** Many YCA offenders go to the Federal Correctional Institution in Lompoc, California, for "treatment" under § 5010(b) or (c). The latest available figures for that institution show that of 777 persons confined, 297 have Youth Act commitments, while 480 have adult commitments. Of the 480, 228 are serving sentences from five years to over twenty years, and 5 have life sentences. U. S. Bureau of Prisons, Statistical Report-Fiscal Year 1975 30. We are entitled to assume that many, if not most, of the 480 are "hardened offenders," association with whom by young offenders was the very evil which Congress sought to cure by the YCA.

**10.** Indeed, a person whose credentials are outstanding—Norman A. Carlson, Director of the U.S. Bureau of Prisons—said, in a recent congressional appearance:

". . . while we know rehabilitation can take place in a prison setting, we do not know how it takes place, when it takes place, if it takes place, or why it takes place."
". . . rehabilitation cannot be uniformly guaranteed and reliably measured . . ."
Statement of Norman A. Carlson before the Subcommittee on Penitentiaries and Corrections of the Senate Committee on the Judiciary, October 5, 1977.

**11.** Under other circumstances I would quarrel with a procedure that allows an appellate court to engage in an independent reading of the record to affirm the sentence of a revoking judge. The decision whether or not to revoke probation is committed firmly to the trial court's discretion. *Burns v. United States*, 287 U.S. 216, 221, 53 S.Ct. 154, 77 L.Ed. 266 (1932). In this case my objection is moot, however, since there is now only one possible disposition that can be made. *See* text, *infra*.

If, in fact, it is impermissible for a revoking judge to consider an uncounseled misdemeanor conviction—an issue that I do not reach—certainly the present record does not allow us to state with any confidence that the court below did *not* rely upon such a factor. The judgment of the court was "that the facts set forth in the Petition [to Revoke Probation] are true, that there was a violation of the probation order in this case, and that the probation should be revoked." *Transcript of Revocation Hearing at* 27. If anything, the sequence of phrases suggests that the finding of a "violation of the probation order" was based on "the facts set forth in the Petition"—which relate solely to the D.W.I. conviction. *Record on Appeal at* 10–12.

possibility of remaining in the custody of the Attorney General for four years. The defendant is receiving a longer sentence than the sentence originally imposed, which cannot be done without violating his constitutional rights under the double jeopardy clause of the Fifth Amendment.

My colleagues cite *Pollard v. United States*, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957), and *United States v. Kenyon*, 519 F.2d 1229 (9th Cir.), *cert. denied*, 423 U.S. 935, 96 S.Ct. 293, 46 L.Ed.2d 267 (1975), in support of the new sentence. But the question is not, as in *Pollard*, simply whether a custodial term may be substituted for an invalid probationary term. The question is whether a custodial term that enlarges the potential period of confinement may be substituted for any probationary term, valid or invalid. I would have supposed the answer to that question is found, not in *Pollard*, but in *Roberts v. United States*, 320 U.S. 264, 64 S.Ct. 113, 88 L.Ed. 41 (1943), which held that

> having exercised its discretion by sentencing an offender to a definite term of imprisonment in advance of probation, a court may not later upon revocation of probation set aside that sentence and increase the term of imprisonment.

*Id.* at 272–73, 64 S.Ct. at 117; *see also* 18 U.S.C. § 3653.

*Kenyon* is equally beside the point. There, an increase in punishment was upheld because the original sentence omitted a special parole term required by statute. Corrective sentencing of this nature has long been considered proper. *See Bozza v. United States*, 330 U.S. 160, 166–67 & n.2, 67 S.Ct. 645, 91 L.Ed. 818 (1947); *Mathes v. United States*, 254 F.2d 938, 939 (9th Cir. 1958). Here the original sentence did not impose less than the legal measure of punishment; it was invalid, rather, precisely because it imposed more.

Our choices have been narrowed. Since the sentencing judge found that Marron could benefit from youth offender treat-

ment (therefore ruling out disposition under § 5010(d)), and since Marron would be subject to possible increased punishment were he sentenced under either § 5010(b) or § 5010(c), our only course is to remand to the district judge with specific instructions that he resentence the defendant to a valid § 5010(a) probation to be treated as commencing April 2, 1976, the original date of sentence. Thus the law of the circuit, in combination with the Constitution and Youth Corrections Act, has produced an ironical result. The sentencing judge has painted the revoking judge [12] into a corner where he can do nothing about the conduct of a probationer, although that conduct would presumably justify a revocation of probation.

---

**12.** Marron has not raised the question of a judge hearing the revocation matter who was not the sentencing judge. Accordingly, I express no opinion as to the validity of this procedure.