**UNITED STATES of America**

v.

**William T. COEFIELD, Appellant.**

**No. 24085.**

United States Court of Appeals,
District of Columbia Circuit.

Feb. 6, 1973.

Marilyn Cohen, Washington, D. C., for appellant. Neal M. Mayer, Washington, D. C. (appointed by this court) also argued for appellant.

Brian W. Shaughnessy, Asst. U. S. Atty., for appellee. Charles H. Roistacher, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty. at the time the brief was filed, and John A. Terry, Asst. U. S. Atty., were on the brief, also argued for appellee. John S. Ransom, Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, FAHY, Senior Circuit Judge, and WRIGHT, McGOWAN, TAMM, LEVENTHAL, ROBINSON, MacKINNON, ROBB and WILKEY, Circuit Judges, sitting *en banc.*

FAHY, Senior Circuit Judge:

The appeal is from a judgment of conviction of robbery in violation of 22 D.C. Code § 2901 (1967), as amended, (Supp. V, 1972). After the appeal was heard by a division of the court it was reheard by the court en banc to consider important and recurring problems arising from the administration of the Federal Youth Corrections Act. 18 U.S.C. §§ 5005–5026 (1970).

## I. APPEAL FROM THE CONVICTION

Appellant testified that he engaged in conversation with two young ladies on the street, who in no way complained of his company as the three walked together toward a bus stop. Indeed, it is not disputed that they exchanged telephone numbers. Both ladies testified that at the bus stop one of the ladies reached into her slacks for bus fare, and when she removed a $10.00 bill, appellant snatched it and ran.[1] Upon conviction of the robbery thus ascribed to appellant he was sentenced to imprisonment of two to six years, to be served consecutively to any sentence then being served.[2]

Appellant claims on appeal, as he did at trial, of an unnecessarily suggestive photographic identification by the two ladies, from which it is said to follow, under the "poisonous tree" doctrine of Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441

---

1. There was additional testimony from the ladies that appellant called on the telephone several days later, "asking us about his ten dollars. When were we going to give him his ten dollars back," and that appellant wanted to meet the girls somewhere.

2. Appellant at the time was serving sentence of two to six years for another pickpocketing robbery of $40.00.

(1963), that subsequent lineup and in-court identifications were inadmissible as stemming from the photographic identifications. At the conclusion of a hearing on a motion to suppress the identification evidence, the District Court, we think correctly, ruled that the lineup and in-court identifications were admissible as based on a source independent of the photographic identifications. We accordingly affirm the conviction and turn to consideration of the sentence.

## II. CONSIDERATION OF COEFIELD'S POSSIBLE SENTENCE UNDER THE YOUTH CORRECTIONS ACT

Because appellant was 20 years of age at the time of his conviction, a discussion arose at oral argument of the appeal as to a possible remand of the case for reconsideration of the sentence under the Youth Corrections Act. Appellant's counsel was unable then to advise the court as to his client's wishes in that regard. As arranged, however, he filed a memorandum after argument advising the court that appellant was amenable to consideration of his sentence under the Act. The Government in a responding memorandum took the position that a remand was unnecessary, contending that the sentencing court, by imposing an adult sentence consecutive to the other adult sentence of two to six years appellant was already serving, implicitly found that appellant would not derive benefit from a sentence under the Act.

In passing the Youth Corrections Act, Congress provided the federal sentencing judge with four alternatives. The first allows the judge to suspend imposition or execution of sentence entirely and place the youth offender on probation. 18 U.S.C. § 5010(a). The second allows the judge upon finding that the convicted person is a youth offender and that the offense is one punishable by imprisonment under other applicable provisions of law, to sentence the youth offender to the custody of the Attorney General for treatment and supervision in a special youth facility. 18 U.S.C. § 5010(b). Under this alternative, the youth offender must be unconditionally discharged no later than six years after the date of his conviction. 18 U.S.C. § 5017(c). Because the maximum limitation of commitment under the second alternative may not be sufficient time in the judgment of the court for full rehabilitation of the youth offender, the judge may sentence the youth offender to commitment in a youth institution but specify the term, which may exceed six years but may not exceed the maximum period authorized by law for any applicable penalty. 18 U.S.C. § 5010(c). Under the fourth alternative, the court, provided it finds that the youth offender will not derive benefit from treatment by commitment to a youth institution under either the second or third alternatives noted above (18 U.S.C. § 5010(b) or (c)), may sentence him under any other applicable penalty provision. 18 U.S.C. § 5010(d). The court in selecting among these several alternative sentences has available to assist him, and the sentence to be served is subject to, the additional statutory provisions, and operation under them, outlined hereinafter in Part III of this opinion.

Since appellant was not placed on probation, or sentenced under either the second or third alternative above outlined, the question arises whether there has been a finding as required by section 5010(d) that he would not derive benefit from treatment under subsections (b) and (c), resulting in his sentence as an adult under the fourth alternative. In construing section 5010(d) in United States v. Waters, 141 U.S. App.D.C. 289, 291; 437 F.2d 722, 724 (1970), we held:

> Under the Youth Corrections Act, § 5010(d), the court must affirmatively find that the youth offender will *not* benefit from rehabilitative treatment before the offender can be sentenced as an adult pursuant to the statute governing the offense for which he was convicted. (Footnote omitted.) [Emphasis in original.]

Likewise, in United States v. Ward, 147 U.S.App.D.C. 149, 454 F.2d 992 (1971), in reserving its ruling on appellant Ward's motion for summary reversal, the court remanded the record to the District Court for elucidation of its reasoning why Ward could be denied sentencing under the Act notwithstanding the fact that the sentencing court recommended he be sent to "'an institution where they usually send youth offenders such as Petersburg, Virginia, or some institution of that type.'" 147 U.S. App.D.C. at 151, 454 F.2d at 994.

The purposes of Congress in requiring an affirmative finding under section 5010(d) are explained in Judge Wilkey's opinion for the court in *Waters*, are restated in *Ward*, and need not be repeated here at length. We note, however, the recognition that the trial judge retains discretion "to deny such rehabilitative treatment to those youths in the exceptional case where the judge determines that the special youth treatment afforded by the Act would be of no value." 141 U.S.App.D.C. at 291, 437 F.2d at 724. Not only was there no finding of no benefit in *Waters*, but as in *Ward* the failure of the sentencing court to sentence under the Act was accompanied by a recommendation based on Waters' youth. Since this was inconsistent with the failure to sentence under the Act, this court required the sentence as an adult to be vacated and the case remanded for resentencing pursuant to the finding requirements of section 5010(d). The court added:

> [W]e believe that this discretion [of the sentencing court] is circumscribed by the findings of fact in the individual case which the District Judge is required to make either explicitly or implicitly.

141 U.S.App.D.C. at 292, 437 F.2d at 725; and see, to like effect, *Ward*, 147 U.S.App.D.C. at 151, 454 F.2d at 994.

These references to an implicit finding are advanced by the government now to support the adult sentence of Coefield. But the sentencing transcript contains no reference whatever to the Act nor does any reference to it appear in the presentence report submitted to the judge. It would seem, therefore, necessary to remand the case to the District Court for reconsideration of the sentence unless we are to imply the "no benefit" finding. This we are unable to do. In the first place, the record does not support such an implication. The fact that Coefield was already serving an adult sentence not imposed under the Act, does not establish by implication the requisite finding. The papers before us indicate that appellant has been quite successfully serving out his previous sentence, having completed high school equivalency during the sentence, and that he is now participating in a rehabilitative furlough program under which he is released for short periods of time.[3] In addition, it appears from the presentence report of the first robbery that prior to sentencing for that offense appellant was confined for at least a part of the time under a program of work release, and responded favorably. From such a record we can draw no clear inference that the trial judge found no benefit. Given Coefield's promising response to the correctional program and his earlier history free of encounters with the law, an equally compelling inference is that the judge failed to consider the Youth Corrections Act. True, Coefield's record is not all favorable, but its hopeful indications strongly suggest that now is hardly the time to place him for two to six more years in an environment where there is greater likelihood that his responsive attitude toward rehabilitation could be reversed. To avoid the "degenerative and needless transformation of many of these young persons into habitual criminals"[4] is the

---

3. Our source for this information is the memorandum submitted by appellant's counsel subsequent to oral argument. It is not questioned by the Government.

4. H.R.Rep.No.2979, 81st Cong., 2d Sess. 1 (1950), U.S.Code Cong. & Admin.News 1950, p. 3983.

purpose of the Act. There is an additional reason why the finding of no benefit should not be left to implication, as now set forth in Part III.

### III. STANDARDS OF SENTENCING UNDER THE ACT

▇▇▇ 1. The ambiguity illustrated by the *Coefield* sentence has led the court en banc to give further consideration to the question whether the finding required by section 5010(d), as a condition to an adult sentence, should be left to implication. The passing reference in *Waters* to this possibility, a reference not necessary to the court's decision, we think must give way to the statements in *Waters* that as a condition to an adult sentence the court is required affirmatively to find that the youth offender would not benefit from rehabilitative treatment, and, also, that the judge's discretion "is circumscribed by the findings of fact in the individual case which the District Judge is required to make." The main thrust of the opinion thus is definitely toward explicitness, and we now adopt that as the rule; for when a youth offender is sentenced as an adult, and nothing more appears, it cannot be said with certainty that the Act was considered and a negative finding with respect to its possible benefits was made. *Cf.* Hubb v. United States, 298 A.2d 512 (D.C.1972).

2. The present consideration of the Act by the court en banc also furnishes an especially appropriate occasion for the adoption of some further guides in administering the Act, centering upon the relation of section 5010(d) to the Act as a whole. No federal statute having to do with sentencing compares in comprehensiveness with the Youth Corrections Act. In addition to the four alternative sentences available to the judge in the case of a youth offender, outlined in Part II, *supra*, a number of special provisions have been made available for assisting the judge, the youth, and the public, emphasizing the distinctive character of the sentencing of a youth offender, as compared with the

larger freedom of the sentencing judge in adult cases. United States v. Bryant, 143 U.S.App.D.C. 53, 442 F.2d 775, cert. denied, 402 U.S. 932, 91 S.Ct. 1534, 28 L. Ed.2d 866 (1971). A special Division is created under the Board of Parole to assist in administering the Act. Section 5005. The Division functions under the Attorney General and in collaboration with the Director of the Bureau of Prisons. Sections 5005, 5007. The Director shall provide classification centers and agencies, which shall make a complete study of each committed youth offender. Section 5014. A report of the findings of the centers or agencies, with their recommendations for the youth's treatment, goes to the Director and to the Division. *Ibid.* At least one member of the Division shall interview the committed youth, "review all reports concerning him, and make such recommendations to the Director and to the Division as may be indicated." *Ibid.* On the basis of the report and recommendations the Director has a choice of recommendations: conditional release under supervision, transfer or allocation to another agency or institution for treatment, or confinement for treatment under conditions believed best designed for the protection of the public. Section 5015. Periodic examination of all committed youth offenders, and reports to the Director as to each, are required, and the Director shall report to the Division as the Division may require, as also shall probation officers and supervisory agents with respect to each youth under their supervision. Section 5016. Details are set forth as to the authority of the Division, upon notice to the Director, to release conditionally under supervision a committed youth offender, and with respect to recommendations in this regard by the Director to the Division. Section 5017(a). The periods of detention before discharge, with the differences due to whether the youth offender has been committed under sections 5010(b) or 5010(c), are contained in sections 5017(c) and (d). Revocation by the Division of its previous orders is

permitted by section 5018, except an order of unconditional discharge. Committed youth offenders at liberty under supervision or conditionally released are supervised as detailed in section 5019.

■ Such attentiveness by Congress to this correctional system for youth offenders, developed over a period of many years of congressional study, calls for no less attentiveness on our part in administering the legislation, such as was given by this court in *Waters*. We there pointed out that only in "the exceptional case where the judge determines that the special youth treatment afforded by the Act would be of no value," 141 U.S. App.D.C. at 291, 437 F.2d at 724, may a youth offender be sentenced other than under the Act, and then only upon the basis of an affirmative finding in the individual case that a sentence under the Act would not have the rehabilitative benefit contemplated by the Act where, for example, the judge, on the basis of a prior sentence under the Youth Corrections Act, which was followed by a subsequent offense, reached a decision, perhaps based on the section 5010(e) report, that the defendant would not derive rehabilitative benefit from a second sentence under the Act. This is an illustrative example, and is not the only or exclusive basis upon which a "no benefit" finding can be made[5]; we have not attempted to spell out all the grounds that might form a basis for an affirmative "no benefit" finding.

■ The approach in *Waters* and *Ward* would seem to presuppose a statement of reasons by the sentencing judge

if these special provisions are not being utilized and the youth offender is sentenced as an adult. To require reasons to be stated is clearly not inconsistent with those decisions; and we now deem this to be essential to a knowledgeable administration of the Act as intended by Congress. When, however, prior to imposing a sentence, the judge has availed himself of the assistance afforded by section 5010(e),[6] and after considering the report in light of the other data before him, follows its findings or recommendation in imposing sentence, additional reasons need not be stated, although, of course, the judge is not precluded from adding reasons of his own.[7] On the other hand when section 5010(e) is not invoked, or the judge imposes a sentence contrary to the recommendation in a report following a referral under section 5010(e), the need for more detailed statement of reasons is more obvious. In providing for reasons to be stated by the District Court we are not seeking to elicit any litany or prescribed formula. We do consider it essential, however, to assure in every case: firstly, that the District Judge manifest not only an awareness that the Act is applicable to the case, but also an accurate understanding of the scope of his discretion under the Act; secondly, that the District Judge has been informed of the pertinent facts relating to the individual defendant before him, either by evidence coming to his attention in the trial, by a presentence report, or by a recommendation and report made under section 5010(e); and thirdly, that the District Judge, by his statement of reasons

5. As repeated in *Ward*, the judge "may resort to the adult sentence '*only if* the applicable facts in the individual case meet the statutory requirements,'" 147 U.S. App.D.C. 151, 454 F.2d 994, in accordance with the intention of Congress.

6. This section reads as follows:
    (e) If the court desires additional information as to whether a youth offender will derive benefit from treatment under subsections (b) or (c) it may order that he be committed to the custody of the Attorney General for ob-

servation and study at an appropriate classification center or agency. Within sixty days from the date of the order, or such additional period as the court may grant, the Division shall report to the court its findings. Added Sept. 30, 1950, c. 1115, § 2, 64 Stat. 1087.

7. Where the court sentences under the Act, without more, the possibility of challenge to the sentence is so remote that we need not now dwell upon whether more might be required in an exceptional situation we do not envisage.

where required,[8] has given consideration and related the facts of the individual case to the applicable law. If these requirements are satisfied, there should be no large number of appeals calling for review of sentences which call for consideration of the Youth Corrections Act.

■ 3. We add that none of the existing rights of a person convicted of crime and which pertain to the sentenceing process, including the right of allocution, are impaired by the Act, and reasonable opportunity to the youth offender, if requested, to adduce evidence bearing on the sentence to be imposed, shall not be denied.

## IV. APPELLATE REVIEW

■ 1. The sentence of a youth offender as an adult is reviewable for legal error, such, for example, as a failure to utilize the Act because when sentenced the offender has reached the age of 22, although when the verdict or finding of guilt was rendered he was in the youth offender range of 18 to 22 years. Such an error was the basis of decision in United States v. Carter, 225 F.Supp. 566 (D.D.C.1964), opinion by Judge Youngdahl, recently followed by our court in United States v. Carmichael, 152 U.S.App.D.C. 197, 469 F.2d 937 (1972), and now reaffirmed in Coefield's case.

■ 2. Review is also permissible, as heretofore illustrated by both *Waters* and *Ward*, to determine whether the sentencing process has conformed with the standards set forth in those cases.[9] These standards we have now amplified as above set forth when the youth offender is sentenced as an adult and not under subsection (b) or (c) of section 5010. In such event the finding

---

8. See footnote 7 and text at p. 1157, both *supra*.

9. The Court of Appeals for the Fourth Circuit has recently approved our *Waters* and *Ward* decisions in the following language:

In two recent cases the District of Columbia Circuit has held that under "§ 5010(d), the court must affirmatively find that the youth offender will *not* benefit from rehabilitative treatment before the offender can be sentenced as an adult . . . ." United States v. Waters, 141 U.S.App.D.C. 289, 437 F.2d 722, 724 (1970); United States v. Ward, 147 U.S.App.D.C. 149, 454 F.2d 992 (1971). We agree with these decisions and have concluded to follow them.

In the instant case the district court made no finding that Cox would not benefit from treatment as a youth offender; and when on motion under 28 U.S.C.A. § 2255, the absence of the finding was urged as a ground warranting relief, the district court found as a fact that "[i]n sentencing Petitioner, the court made no finding that Petitioner would not benefit from treatment under [the Act]," and specifically rejected the holding of *Waters* on the ground that the legislative history of the Act made it clear that the Act was not intended to remove the discretion of the district judge whether or not to sentence a convicted

youthful offender under the statute governing his offense or under the Act.

Irrespective of the legislative history, the language of the Act is quite specific. It requires a finding that a youth offender will not benefit from treatment under the Act before the district court "may" sentence the youth as an adult. We agree with the language in *Waters* that "[w]hile the District Court does have discretion to sentence a 19-year-old 'youth offender' under either the applicable statutory offense provision or the Youth Corrections Act, we believe this discretion is circumscribed by the findings of fact in the individual case which the District Judge is required to make either explicitly or implicitly," 437 F.2d at 725, and "[w]hile the District Court is given discretion in regard to sentencing, that discretion must be exercised in accordance with the intention of Congress underlying the statutory provisions . . . .", 437 F.2d at 727. Like *Ward*, the implications which can be drawn from the failure to make an explicit finding in this case are too uncertain for us to conclude that there was an implicit finding that Cox would not benefit from sentencing under the Act, especially when the district court found that it had made no finding. Earl French Cox, Jr. v. United States, 473 F.2d 334, 344 (4th Cir. 1972) (Reheard en banc, December 7, 1972).

required to be made under section 5010(d) as a condition to an adult sentence is to be explicit—"affirmative" as said in *Waters*—and must be supported by reasons from which it can be determined that it is consistent with the purposes of the Act.[10]

The judgment of conviction is affirmed. The sentence is vacated and the case is remanded to the District Court for further proceedings consistent with this opinion.

## APPENDIX

The Senate Report. states that the "purpose of the proposed legislation is to provide a new alternative sentencing and treatment procedure for persons under the age of 24 . . ."[1] S.Rep. No. 1180, 81st Cong., 1st Sess. 1 (1949).

> Reliable statistics demonstrate, beyond possible doubt, that the period in life between 16 and 23 years of age is the focal source of crime. It is during that period that habitual criminals are spawned.

H.R.Rep. No. 2979, 81st Cong., 2d Sess. at 2 (1950), U.S.Code Cong. & Admin.News 1950, at 3984 (hereinafter cited as H.R.Rep.).

> It is believed that by its provision the problem of crime will be met at its focal point, namely, before the traits of the habitual criminal are allowed to develop. . . .

H.R.Rep. at 1, U.S.Code Cong. & Admin.News 1950, at 3983.

Congress seemed convinced that adult penal institutions were failing:

> Again, reliable statistics demonstrate, with reasonable certainty, that existing methods of treatment of criminally inclined youths are not solving the problem. A large percentage of those released . . . return to antisocial conduct and ultimately become hardened criminals.

H.R.Rep. at 2, U.S.Code Cong. & Admin.News 1950, at 3985.

Congress also seemed convinced that such facilities were corruptive of the youths placed in them:

> By herding youth with maturity, the novice with the sophisticate, the impressionable with the hardened, and by subjecting youth offenders to the evil influences of older criminals and their teaching of criminal techniques, without the inhibitions that come from normal contacts and counteracting prophylaxis, many of our penal institutions actively spread the infection of crime and foster, rather than check it.

H.R.Rep. at 2–3, U.S.Code Cong. & Admin.News 1950, at 3985.

Congress found that young people between the ages of 16–22, especially, were hopeful subjects for rehabilitation:

> Most of the causes which contribute to antisocial conduct of youth offenders in the period between adolescence and maturity disappear when the youth reaches full maturity.

H.R.Rep. at 3, U.S.Code Cong. & Admin.News 1950, at 3985. The problem for Congress was therefore,

> to provide a successful method and means for treatment of young men between the ages of 16 and 22 who stand convicted in our Federal courts and are not fit subjects for supervized probation—a method and means that will effect rehabilitation and restore normality, rather than develop recidivists.

H.R.Rep. at 3, U.S.Code Cong. & Admin.News 1950, at 3985.

Congress believed it found the alternative in a very successful English program:

> [the program proposed] is not experimental. It is based on the principles and procedures developed under what is known as the Borstal system in

---

10. We attach an Appendix containing portions of the legislative history of the Act, as furnishing additional background for our opinion.

1. The age as finally approved was 18 to 22 years.

England, which has been in successful operation since 1894.

H.R.Rep. at 3, U.S.Code Cong. & Admin. News 1950, at 3985.

Congress found that the Borstal system had a rate of recidivism of only 8.1 percent. H.R.Rep. at 6.

Treatment under the Act was not intended to be only for those who were certain to be rehabilitated or benefited. H.R.Rep. at 3. Thus, a variety of facilities were to be provided, with various degrees of control and security as well as different programs: "[The Borstal system] now embraces 13 institutions. Some are walled. Others are completely open. Each institution has its own particular specialty." H.R.Rep. at 5, U.S. Code Cong. & Admin.News 1950 at 3987.

In an early version of the bill this was specifically provided for [2] as well as in the statute as finally enacted:

treatment in institutions of maximum security, medium security or minimum security types, including training schools, hospitals, farms, forestry and other camps. . . .

18 U.S.C. § 5011.

There is a provision also for allowing the Attorney General to choose among public and private facilities and programs. 18 U.S.C. § 5013.

In the 1943 Senate Hearings, Senator Kilgore stated the general understanding and expectation that about 10 percent or less of youth offenders would be sentenced to adult imprisonment. At that time the category of youth offenders included persons under 24 years. 1943 S. Hearings at 13.

Judge Parker in explaining a provision in 1943, the language of which in pertinent part is identical with section 5010(d) as enacted,[3] stated:

We are dealing with them [youth offenders] in a more liberal way than we are with older offenders, in that we require, whatever the sentence given by the law be, that the judge shall have the discretion—he does not have to give them the benefit of this, but can sentence them like anybody else. You find some boys of 18 years who ought to be sentenced like anybody else—but instead of sentencing them to the sentence prescribed in the statute, he can send them to the Youth Authority Section for a period of 6 years.

1943 S. Hearings at 12.

During the intervening years subsequent to the 1943 Hearings and prior to the enactment of the Act, Congress, in order to extend the scope of the Act to youth offenders of even more doubtful rehabilitative possibilities added to the 1943 version of the proposed bill what is now section 5010(c), so that those youths who might not have qualified for treatment under section 5010(b) because of the inadequacy of the six year limitation, could be sentenced under the Act.

ROBB, Circuit Judge (concurring):

I concur in Judge Fahy's opinion, with one reservation. I reject any suggestion or implication that the Youth Corrections Act authorizes this court to disturb a lawful sentence imposed by a district judge in the exercise of his discretion and upon the basis of his in-

**2.** S. 895, The Federal Corrections Act, Title III, § 2, proposed 78th Cong., 1st Sess. (1943). Hearing on S. 895 Before the Subcomm. of the Senate Comm. on the Judiciary, 78th Cong., 1st Sess. at 3 (1943) (hereinafter cited as 1943 S. Hearings).

**3.** The 1943 provision read as follows:
If the court shall find the youth offender will not derive benefit from treatment and should not be committed to the Authority under subsection (a), then

the court may sentence the youth offender under any other applicable penalty provision. . . .
Federal Corrections Act, Title III, § 1(c), 1943 S. Hearings at 3.

Section 5010(d) reads:
If the court shall find that the youth offender will not derive benefit from treatment under subsection (b) or (c), then the court may sentence the youth offender under any other applicable penalty provision.

formed evaluation of the defendant. The review of sentences is not our business, and so long as the district judge exercises his discretion responsibly, after considering the facts and the statute, we may not substitute our judgment for his. The standards we have formulated must not lead to appellate intrusion into the sentencing process.

MacKINNON, Circuit Judge (dissenting):

In my view this case should not be remanded to consider Coefield's eligibility for a youth sentence because Judge Robinson adjudged an adult sentence for him a little over two months *before* he was sentenced by Judge Green. The imposition of an adult sentence of a youth offender when such sentence amounts to a final judgment involves an implicit finding that the youth offender would not benefit from Youth Act treatment. Moreover, ten months *after* Judge Green sentenced appellant, Judge Robinson denied a motion specifically requesting a Youth Act sentence and this decision is final. It was not appealed. This forecloses the subsequent litigation of that issue between the parties. In addition since the statute only provides that the sentencing judge shall "find" that the youth offender will not derive benefit, this does not require a statement of "reasons."

I

Appellant Coefield was born on December 31, 1948. On July 31, 1968 he committed two robberies, by snatching, in which he obtained a total of $45. The victims were both women. His indictment for such offenses charging robbery in violation of D.C.Code § 22–2901 was returned on September 30, 1968 (Criminal No. 1548–68).

During the time he was released from custody awaiting trial he committed a similar robbery by snatching on April 26, 1969 in which he stole $10. Again the victim was a woman. The second indictment, which was for this offense, was returned on July 29, 1969.

Appellant was tried on the first indictment by a jury before Judge Aubrey E. Robinson, Jr., found guilty on both counts and on December 16, 1969 was sentenced to serve an adult sentence of two (2) to six (6) years concurrently on each count. He appealed this conviction and made a motion for release on work release program pending appeal. In denying said motion on September 15, 1970, Judge Robinson found:

> [T]his Court concludes that the defendant is a sophisticated predator and a danger to the public and would continue to be so if released. . . .

Coefield's appeal to this court on the first indictment was dismissed *sua sponte* on November 2, 1970 by Judges Spottswood Robinson III and Robb when counsel's motion for leave to withdraw was granted.

Appellant was tried on the second indictment by a jury before Judge June L. Green on December 17, 1969, *the day after he was sentenced on the charges of the first indictment.* A guilty verdict was returned on this charge of the second indictment and Judge Green adjudged another adult sentence for him on March 3, 1970 (two months and 18 days after he was awarded an adult sentence by Judge Robinson) of imprisonment of two (2) to six (6) years, to run *consecutively* to the *adult* sentence on the first indictment.

By petition dated November 1, 1971 appellant requested that his adult sentence adjudged by Judge Robinson be modified to one under the Federal Youth Corrections Act. This motion effectively raised the issue as to his eligibility for a Youth Corrections Act sentence. The motion was denied by order on December 21, 1971. *No appeal was taken from this order,* so that judgment is final.

II

It thus appears that when appellant came on for sentencing before Judge

Green on March 3, 1970 he was already serving an *adult sentence* which had been adjudged by Judge Robinson only two months and 17 days previously on December 16, 1969.[1] In imposing sentence on the second indictment, apart from facing the practical impossibility of imposing a concurrent or consecutive Youth Corrections Act sentence, Judge Green had the right to rely upon the regularity of Judge Robinson's sentence and that regularity necessarily included a finding by Judge Robinson that appellant would "not derive benefit from treatment under [the Youth Corrections Act]" 18 U.S.C. § 5010(d). The decision by Judge Robinson to impose an adult sentence made it unnecessary for Judge Green to reconsider the appellant's eligibility for a Youth Corrections Act sentence as that issue had been *necessarily involved* in Judge Robinson's decision just two and one-half months before and Coefield is collaterally estopped from raising the issue in a subsequent action.

The doctrine of collateral estoppel is an aspect of the broader principle of *res judicata;* it applies to both civil and criminal proceedings, and extends to facts *necessarily involved* in an issue or necessarily implied by a judgment, Sealfon v. United States, 332 U.S. 575, 578, 68 S.Ct. 237, 92 L.Ed. 180 (1948), Pena-Cabanillas v. United States, 394 F.2d 785, 786 (9th Cir. 1968) as well as to facts actually decided.

If there were any doubt as to the conclusive nature of the first sentence on

the issue of Coefield's eligibility for YCA treatment, that doubt was completely removed by Judge Robinson's order of December 21, 1971 which *denied a specific motion* to modify appellant's sentence so as to impose one under the Youth Corrections Act. That same issue cannot again be raised by appellant. I thus see no necessity to discuss any of the considerations treated by the opinion of the majority.

### III

The majority opinion imposes the requirement for the future that the sentencing court state the "reasons" upon which it may base its finding

> that the youth offender will not derive benefit from treatment under [the Youth Corrections Act] . . . .

18 U.S.C. § 5010(d).

The Youth Corrections Act, however, only requires that

> [T]he court shall *find* that the youth offender will not derive benefit from [youth] treatment under subsection (b) or (c) . . . .

18 U.S.C. § 5010(d) (Emphasis added.)

"Reasons differ from findings in that reasons relate to law, policy, and discretion rather than facts." 2 K. Davis, Administrative Law § 16.12 (1958). The opinion of the majority in requiring "reasons" thus imposes a requirement not imposed by Congress and goes even

---

1. It should also be noted that the sentence adjudged by Judge Robinson of two to six years would mean that appellant would be 22 years, 11 months and 16 days of age before he would have served the *minimum* portion of his sentence on the charges of the first indictment. An offender to be eligible for sentencing under the Youth Corrections Act must be under the age of 22 years at the time of conviction, 18 U.S.C. § 5006(e). The obvious intent of this provision was to place a top ceiling on the age when an offender could enter the youth correction treatment pro-

gram. Appellant here could not enter the program on his second sentence at a minimum until he was 15 days short of his 23rd birthday and he might be considerably older before he would have fully served his sentence. Thus, while he would satisfy the literal requirements of the statute that he be under 22 at the time of conviction he would not satisfy the real objective that Congress had in mind when it imposed the 22 year age limitation, *i. e.,* that the youth offender not be above 22 when he starts serving his Youth Act sentence.

further than the Supreme Court went in S.E.C. v. Chenery Corp., 318 U.S. 80, 95, 63 S.Ct. 454, 87 L.Ed. 626 (1943), where it refused to enforce "formal requirements" upon an *administrative agency*. And courts have always been permitted wider latitude in this respect than administrative agencies.[2] I thus see no justification for placing our trial courts in an administrative straight jacket on sentencing youth offenders, which incidentally involves a subject over which we have very little control. It is accordingly my conclusion that the majority opinion in this respect exceeds our authority.

### IV

I also dissent specifically from the statement at page 1155, *supra*, that:

> The fact that Coefield was already serving an adult sentence not imposed under the Act, does not establish by implication the requisite finding.

This fails to give adequate consideration to the prior judgment and completely overlooks the effect of the contemporaneous sentence and judgment on the issue of "no benefit." Judge Green's trial began *the day after Coefield was sentenced on the first offense* and she was not ignorant of his sentence thereon. She confirmed her awareness of his prior sentence by fashioning her sentence to run consecutively to the prior sentence. The prior sentence was also referred to by counsel at the time of allocution. While a sentence which was adjudged long aft-er a prior adult sentence, for some purposes, might not be controlled by an implicit "no benefit" finding in a prior offense because of changed circumstances, such is not this case. The two sentences here were practically contemporaneous, with no material intervening circumstance, except that appellant was convicted upon a second indictment which charged his third offense. This additional conviction was not a factor likely to cause any fair-minded judge to impose more lenient punishment.

In addition, I would refrain from relying upon the claimed conduct of appellant *while serving his sentence in prison* as a basis of our interfering in the sentencing function of the trial court. We are in no position to evaluate a prisoner's conduct in prison. We have no jurisdiction to impose our judgment or philosophy as to sentences. Such matters are for the trial court and the Parole Board and the facts necessary to such a determination are not a proper part of this record on appeal. It is improper for the majority opinion to rely upon the sketchy facts here presented.

In conclusion, I repeat that I see no reason to remand this case to the trial court to consider the eligibility of this appellant for a Youth Corrections Act sentence when appellant was given an adult sentence by another court shortly before the instant sentence and when the identical issue as to whether appellant was entitled to an adult sentence was raised on motion in the first case

2. Since most courts, including the Supreme Court, often decide cases without opinions, administrative opinions can hardly be a requirement of due process of law. The Court of Claims once asserted that the requirement of written opinions is a "cardinal principle of Anglo-Saxon jurisprudence." Of this dictum Professor Radin has written that "the word 'cardinal,' the word 'principle' and the word 'Anglo-Saxon' are somewhat excessive." Professor Radin points out that courts in California, Arkansas, and Montana have held statutory requirements of written judicial opinions to be unconstitutional, and courts in eight states have interpreted such requirements to be directory and not mandatory. For compelling unwilling agencies to prepare opinions, due process is a much less promising weapon than section 8(b) of the Administrative Procedure Act which, for determinations required by statute to be made on the record after opportunity for agency hearing, requires not only findings and conclusions but also a statement of "the reasons or basis therefor . . . . "
2 K. Davis, Administrative Law § 16.13 (1958).

and determined adversely to appellant by Judge Aubrey E. Robinson, Jr. shortly after appellant's sentence by Judge Green.[3]

---

3. It conceivably may be argued from the reference to Fed.R.Crim.P. 35 in Judge Robinson's denial of the motion to impose a youth sentence, that the trial court merely did not consider Coefield to have been "illegally sentenced," and still did not consider the YCA. But this argument refuses to recognize the even more obvious implication that in the denial by the trial court of Coefield's specific motion to sentence him under the Youth Corrections Act, the court found that Coefield was not eligible under the statute for YCA treatment, because if he had been eligible, the court was required to sentence him under the YCA. I would conclude from Judge Robinson's citation of Fed.R.Crim. P. 35 that he considered "an illegal sentence" was not involved because he had properly considered Coefield's eligibility for Youth Corrections Act treatment.