UNITED STATES of America

v.

Thomas M. PHILLIPS, a/k/a Thomas P. Bailey, Appellant.

No. 72–1504.

United States Court of Appeals, District of Columbia Circuit.

May 17, 1973.

As Amended August 6, 1973.

Edward L. Koepenick, Bethesda, Md. (appointed by this Court), was on the brief for appellant.

Harold H. Titus, Jr., U. S. Atty., John A. Terry and Peter C. Schaumber, Asst. U. S. Attys., and Robert J. Higgins, Asst. U. S. Atty., at the time the brief was filed, were on the brief for appellee.

Before BAZELON, Chief Judge, WISDOM,\* Circuit Judge for the Fifth Circuit, and RICHEY,\*\* U. S. District Judge for the District of Columbia.

BAZELON, Chief Judge:

Appellant was convicted of robbery.[1] Since the grounds urged for reversal are without merit, the conviction is affirmed. But there is a matter relating to the administration of the Youth Corrections Act which requires our attention.

Appellant was 20 years of age at the time of his conviction and, at the direction of the trial judge, was evaluated for Youth Corrections commitment pursuant to section 5010(e) of the Act. The 5010(e) report recommended adult sentencing and, relying on that report, the trial judge imposed an adult sentence of 2–6 years. The sentencing occurred before this court's decisions in United States v. Coefield and United States v. Reed & Hoston.[2] This case was on appeal when those decisions issued. We think they require that, in the present case, the sentence be vacated and the case remanded for reconsideration of Youth Corrections treatment.

I

An offender less than 22 years of age at the time of his conviction is eligible for Youth Corrections Act treatment.[3] The Act provides the trial judge with four options: (1) granting probation, § 5010(a); (2) committing the offender to a federal Youth Center for up to six years' indeterminate sentence, § 5010(b); (3) committing the offender

---

\* Sitting by designation pursuant to 28 U.S.C. § 291(a).

\*\* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. 22 D.C.Code § 2901.

2. United States v. Coefield, 155 U.S.App. D.C. 205, 476 F.2d 1152 (1973) ; United States v. Reed & Hoston, 155 U.S.App. D.C. 198, 476 F.2d 1145 (1973).

3. 18 U.S.C. § 5005 et seq.

for a maximum term of over six years but not exceeding the maximum sentence for the crime involved, § 5010(c); or (4) sentencing the offender as an adult, § 5010(d). "Congress [has] found that young people between the ages of 16–22, especially, were hopeful subjects for rehabilitation," hence clothed them with a presumptive right to treatment under the Act.[4] Accordingly, an adult sentence may be imposed *"only if* the applicable facts in the individual case meet the statutory requirements,"[5] which include a finding that the offender "will *not* [derive] benefit from rehabilitative treatment" under the Act.[6] This court has held that the *no-benefit* finding must be explicit and affirmative;[7] that it is not enough to merely track the language of the statute;[8] and that the basis for the court finding must appear in a statement of "reasons from which it can be determined that [the sentencing decision] is consistent with the purposes of the Act."[9]

■ We also defined the scope of appellate review:

> What Congress has done, out of its urgent concern for saving the young while there is still time, is to require of the sentencing court in one limited but highly important area of sentencing the *exposure on the record of the factors which informed and shaped the particular exercise of its discretion. An appellate court can only be concerned with the rationality of those factors in relation to Congressional objectives.*[10]

The relevant Congressional objective is that an eligible offender should be denied Youth Corrections treatment "[only] in the exceptional case [where the sentencing judge is] convinced the youth is incorrigible and would derive no help from the program."[11] This is the legal criterion against which a sentencing court's reasons are to be measured.

■ While we have held that a denial of Youth Corrections treatment must be accompanied by a statement of reasons, we have also said that where a trial judge orders and follows the recommendation of 5010(e) study, *"additional* reasons need not be stated, although, of course, the judge is not precluded from adding reasons of his own."[12] This presupposes that the report provides the requisite reasons. In that case, when the sentencing judge adopts the reasons in the 5010(e) report as his own, a restatement would be redundant. This adoption does not, however, obviate the need for exposure of the "factors which informed and shaped" the sentencing decision, nor relieve this court of responsibility to determine whether those reasons, from whatever source, demonstrate a "present and visible" rationality in relation to Congressional objectives.[13]

4. United States v. Coefield, note 2, supra, 476 F.2d at 1159; H.R.Rep.No.2979, 81st Cong., 2d Sess. 1–4 (1950) U.S.Code Cong. Service, p. 3983.

5. United States v. Waters, 141 U.S.App. D.C. 289, 292–293, 437 F.2d 722, 725–726 (1970) (emphasis original).

6. 141 U.S.App.D.C. at 291, 437 F.2d at 724 (emphasis original).

7. United States v. Coefield, note 2, *supra*, 476 F.2d at 1156.

8. *Id.* at 1157.

9. *Id.* at 1158.

10. United States v. Reed & Hoston, note 2, *supra*, 476 F.2d at 1150 (emphasis supplied).

11. United States v. Waters, note 5, *supra*, 141 U.S.App.D.C. at 291–293, 437 F.2d at 724–725; *accord*, S.Rep.No.1180, 81st Cong., 1st Sess., at 5 (1949). *No-benefit* must as a practical matter be taken to mean no significant rehabilitative benefit.

12. United States v. Coefield, note 2, *supra*, 476 F.2d at 1157 (emphasis supplied); *see id.*, at 1157 (when "the judge imposes a sentence contrary to the recommendation in a report . . . the need for *more detailed statement of reasons* is more obvious").

13. United States v. Reed & Hoston, note 2, *supra*, 476 F.2d at 1150. There is no basis for distinguishing, for purposes of appellate review, between a judge's

## II

When an offender is committed for observation pursuant to 18 U.S.C. § 5010(e), he is assigned to a Youth Center Classification Committee composed of an administrator, a parole officer, and a clinical psychologist. The parole officer, a social worker, submits a written classification study reviewing the offender's background, prior record, and the circumstances of the instant offense. The clinical psychologist also submits his individual evaluation. The three professional staff members of the Committee then prepare a joint evaluation and recommendation. This completed study is forwarded to the D. C. Board of Parole,[14] which makes its own recommendation in a covering letter and transmits the report to the District Court. These documents comprise the 5010(e) evaluation.

## III

█ In the present case, the 5010(e) report recommended adult sentencing and the Board of Parole joined in that recommendation. The trial judge had only the following to say about the report and the accompanying transmittal letter:

The Court has received a report from the Youth Center recommending against incarceration there stating among other things that the defendant

appears to be a street-wise individual; that they feel he would not benefit from the Youth Program and they recommend that he be sentenced as an adult.

Accordingly, since that is the purpose of the 5010(e) study, to determine whether or not the subject is likely to be rehabilitated, the Court will follow the suggestion of the Board of Parole and the report from the Youth Center and will impose sentence as an adult.

Since the judge stated no independent reasons for adult sentencing we must now turn to the 5010(e) study, which suggests only two reasons:[15] (A) that appellant is a "rather street-wise individual;" and (B) that he has failed to prove himself because he was on Youth Act probation when arrested for the instant offense.

### A. The label "street-wise"

The Parole Officer's reference to appellant as "a rather street-wise individual," was echoed in the Board of Parole's transmittal letter and repeated by the trial judge. But the report, itself, does not reveal the meaning of this label; nor does an examination of appellant's background. He was convicted of robbery without a weapon, and had only one prior adult conviction—for petit larceny. He is described as not using drugs, and

stated reasons and those he adopts in following the recommendation of a 5010 (e) report. While a 5010(e) report may represent the application of special expertise by the Youth Corrections authorities, that factor cannot relieve this court of its obligation to insure that reasons relied on by the experts are rationally related to Congressional objectives.

14. The D. C. Board of Parole is made up of a Parole Executive and three members appointed by the Mayor-Commissioner. 24 D. C. Code § 201a; Reorganization Plan No. 3 of 1967, § 401–14–210, D.C. Code, Title I, Appendix at p. 61 (Supp. V, 1972) ; Mayor-Commissioner's Organization Order No. 6, Dec. 26, 1967, as amended, March 2, 1971, D.C.Code, Title I, Appendix at pp. 80–81 (Supp. V.

1972). The Parole Executive and members are full time and salaried. While the members of the Board are not required to be professionals in corrections, they are to be selected "on the basis of their broad experience in responsible positions in the fields of correctional service, rehabilitation, law, or education in related fields of behavioral sciences.' Mayor-Commissioner's Organization Order No. 6, *supra*, Part II, at p. 81.

15. The trial judge specifically noted that there was no reference to an overcrowding problem as a basis for the 5010(e) report's recommendation. Since we require that the factors which shape the sentencing decision be disclosed, we cannot assume the existence of any undisclosed reasons—including overcrowding— to justify an adult sentence.

**1204**

neither assaultive nor defiant of authority. He held a full time job, albeit an unskilled one, for over a year prior to his incarceration. Neither this court nor the trial court should be left to conjecture about what the term "streetwise" is intended to convey—or to conceal. Without further explanation, this label is a shallow "litany or prescribed formula." [16]

### B. The prior Youth Act sentence

The Classification Committee evaluation said of appellant's prior Youth Act probation:

> It was felt [at the time of sentencing on the earlier petit larceny charge in the fall of 1970, that appellant] if placed in the probationary setting with the strong guidance and influence of a probation officer, . . . would have been able to make a satisfactory adjustment *without the services of the Youth Center*. However, it appears as though Mr. Phillips returned to his former family situation and was unable to adequately adjust which resulted in his involvement with the instant case.

> The Classification Committee feels that Mr. Phillips has had the opportunity to prove himself in the community and he failed to make a satisfactory adjustment. Therefore, . . . the Committee recommends that Mr. Phillips be sentenced as an adult with the minimum time considered. . . .

▆▆ The Parole Board's letter also cited the fact that appellant committed the instant offense while serving a Youth Act probation sentence.[17] In United States v. Coefield, we recognized that a no-benefit finding might be premised on "a prior sentence under the Youth Corrections Act, . . . followed by a subsequent offense." [18] We presumed, however, that the subsequent offense would evidence a failure to benefit from Youth Act treatment. Since appellant's prior sentence was "without the services of the Youth Center," his subsequent offense could not indicate such a failure. In addition, the report notes that Phillips' return to his "former family situation" played a substantial part in his involvement in the instant offense.[19] Commitment to a Youth Center,[20] however, might also mitigate that environmental pressure.

It is important to note that the 5010(e) report nowhere asserts that appellant would *not* benefit from treatment at the Youth Center. The report indicates just the opposite. The clinical psychologist's evaluation described the factors which caused appellant's criminal behavior:

> The root of his feelings of inadequacy seem to lie in his inability to provide support for himself and his family. . . . He appears to feel a responsibility, since his father is dead, for helping his mother financially, in addition to taking care of his own children and their mother. Because he is too deficient in education and marketable skills to discharge this felt responsibility . . . appellant feels frustrated and impotent. The visible result of these feelings has been criminal activity to supplement his earned income.

16. United States v. Coefield, note 2, *supra*, 476 F.2d at 1157.

17. On the petit larceny charge, appellant received a sentence of 2 years probation under the Youth Act. 18 U.S.C. § 5010 (a).

18. United States v. Coefield, note 2, *supra*, at 1157.

19. See discussion *infra* indicating the extent to which the pressures of appellant's family situation caused his criminal behavior.

20. The trial judge, before sentencing an eligible offender as an adult, must find that he would not benefit from commitment under sections 5010(b) or (c) of the Act, both of which envision a period of incarceration and treatment at a Youth Center, 18 U.S.C. § 5010(d).

Recognizing appellant's rehabilitative potential, the psychologist recommended training in a marketable skill and remedial education—"this would relieve [Phillips'] anxiety . . . and give him a basis" for providing material support to his family without resort to crime.[21] The Classification Committee recommended the minimum adult sentence, and the trial judge, in turn, recommended that appellant be incarcerated "at Petersburg, where he may be afforded training for a useable skill." [22]

We have held that where an eligible offender is sentenced as an adult, but the court recommends treatment like that afforded under the Act, there is an implied finding that the offender would benefit from Youth Corrections treatment.[23] Here the trial judge and Youth Center's professional staff agreed that appellant would derive benefit from vocational and educational training.

The Youth Corrections Act was born of an urgent concern for the rehabilitation of young offenders [24] and a determination to reach some of the underlying causes of criminal behavior.[25] There are indications that the Youth

Corrections system (particularly in the District of Columbia) has fallen far short of the humane impulses for its being.[26] Phillips' case is illustrative. The legislative history of the Act specifically refers to "training offenders for a useful life through the learning of trades." [27] Although the Youth Center's professional staff believe that training in marketable skill could put appellant on the path to a useful law-abiding life, he was recommended for adult sentencing.

## IV

A candid statement of the reasons why an eligible offender is deemed incapable of rehabilitation is necessary to protect his presumptive right to Youth Act rehabilitative treatment. The reasons should reveal (1) what the decisionmakers understand to be the meaning of rehabilitation and the means for achieving it, and (2) to what extent the Youth Corrections system provides those means. It is also imperative to examine more closely the meaning of the label "incorrigible." Such examination might bring us a step closer to meeting the "problem of crime . . . at its

21. The trial judge in United States v. Ward, 337 F.Supp. 185, 194 (D.D.C. 1971), appended to his opinion on remand a letter from the Director of the D.C. Department of Corrections, who described the most desirable Youth Corrections committee as a "defendant whose criminal activity has apparently resulted from an inability to attain desired ends because of a lack of economic, educaional or social opportunity."

22. Unfortunately, a sentencing judge is unable to insure that an offender will get the needed services elsewhere in the correctional system. The judge can only *recommend* to what facility an adult offender will be sent and that recommendation often goes unheeded. In imposing an adult sentence, the trial judge in *Waters*, note 5 *supra*, recommended appellant be placed in a youth facility, but:

. . . [t]his direction of the court was only precatory and was speedily violated by the transfer of appellant . . . to the regular penitentiary.

\* \* \* \* \*

[At the adult facility], appellant was severely beaten with a lead pipe by an older prisoner, hovered in critical condition for about two weeks, suffered permanent impairment of his eyesight, [and] substantial amnesia.

141 U.S.App.D.C. at 292–293, 437 F.2d at 725–726. *See also* United States v. Ward, 147 U.S.App.D.C. 149, 151, 454 F.2d 992, 994.

23. United States v. Ward, 147 U.S.App. D.C. 149, 454 F.2d 992 (1971).

24. *See* United States v. Coefield, note 2, *supra*, 476 F.2d at 1159–1160.

25. *Id.*; Harvin v. United States, 144 U.S. App.D.C. 199, 220, 445 F.2d 675, 696 (1971) (separate opinion of Judge Tamm).

26. *See, e. g.*, United States v. Alsbrook, 336 F.Supp. 973 (D.D.C.1971); United States v. Lowery, 335 F.Supp. 519 (D.D.C.1971).

27. H.R.Rep. 2979, 81st Cong., 2d Sess. at 4 (1950).

**1206**

focal point" [28]—by identifying its causes.

 Our role in this "limited but highly important area of sentencing is to insure that a candid statement of reasons, bearing a "present and visible" rationality to Congressional objectives, does accompany any decision to deny an eligible offender treatment under the Act.[29] The 5010(e) study in this case failed to provide such reasons. The trial judge failed to note their absence or add any reasons of her own. We are, therefore, compelled to vacate appellant's sentence and remand the case.

We do not order that appellant be committed to the Youth Center. We simply remand for reconsideration of sentence based on a full statement of reasons as described herein. For that purpose, the District Court may, of course, order a new 5010(e) study if so advised. And, if adequate reasons for adult sentencing do not exist, appellant must be committed to the Youth Center.

Remanded.

---

28. Harvin v. United States, note 25, *supra*, 144 U.S.App.D.C. at 220, 445 F. 2d at 696 (separate opinion of Judge Tamm); H.R.Rep.No.2979, 81st Cong., 2d Sess. 1 (1950).

29. *See* notes 10–11, *supra* and accompanying text; United States v. Reed & Hoston, note 2, *supra*, 476 F.2d at 1150. For a discussion of a requirement for reasoned sentencing decisions *see* American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Appellate Review of Sentences (Approved Draft 1968) § 2.3(e); R. Goldfarb & L. Singer, After Conviction at 191–95 (1972); M. Frankel, Criminal Sentences at 39–49 (1973); Wyzanski, A Trial Judge's Freedom and Responsibility, 65 Harv.L.Rev. 1281, 1292–1293 (1952).