David R. REED, a/k/a Lee Reed, Appellant,

v.

UNITED STATES, Appellee.

No. 6794.

District of Columbia Court of Appeals.

Argued June 5, 1973.

Decided Dec. 11, 1973.

---

Stephen A. Herman, Washington, D. C., court appointed, with whom Charles R. Cutler, Washington, D. C., court appointed, was on the brief, for appellant.

Lee Cross, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry, and Ann S. DuRoss, Asst. U. S. Attys., were on the brief, for appellee.

Before REILLY, Chief Judge, HARRIS, Associate Judge, and HOOD, Chief Judge, Retired.

REILLY, Chief Judge:

This is an appeal from judgments of conviction for (1) unauthorized use of a motor vehicle, and (2) carrying a pistol without a license, in violation of D.C.Code 1973, §§ 22–2204 and 22–3204, respectively. Appellant was sentenced to imprisonment for a term of one to three years on the first count, and 364 days on the second, the terms to run concurrently. In this court, appellant assigns as error (1) denials of motions for acquittal, and (2) the imposition of an adult sentence in contradistinc-

tion to a sentence under the Youth Corrections Act. We find no error and affirm.

■ Evidence for the government was presented by two plainclothes Metropolitan Police officers. They testified that while on patrol in an unmarked car they saw appellant, in the company of two other men, take a gun from his belt, spin it twice, and replace it. The trio then crossed the street, got into a parked U–Haul van on the driver's side, with appellant entering last. The van was driven around the corner into an alley, behind an apartment house.[1] The officers followed. When they caught up with the van, the men had already alighted and were standing under some trees next to one of the apartments. Neither officer could say for sure who had been driving, but the trees were apparently to the passenger side of the vehicle when the police saw the men, with appellant being the closest to it.[2] As the officers approached and identified themselves as policemen, appellant's two companions ran away. Appellant Reed also started to run but stopped after a few steps and was apprehended, with a gun being recovered from the ground approximately two feet from where he was standing.[3] Being unable to produce a contract for the rental of the U–Haul van or a license for the pistol, he was arrested and charged with receiving stolen property,[4] unauthorized use of a vehicle, and carrying a pistol without a license.

At the conclusion of the government's case in chief, appellant unsuccessfully moved for a judgment of acquittal, and renewed this motion at the close of all the evidence. He now argues that the evidence was insufficient to sustain the conviction of unauthorized use of the van and unlicensed possession of the pistol. We disagree.

Viewing the evidence in the light most favorable to the government—as we must —Crawford v. United States, 126 U.S. App.D.C. 156, 375 F.2d 332 (1967); Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229, cert. denied 331 U.S. 837, 67 S. Ct. 1511, 91 L.Ed. 1850 (1947), we find the trial court correctly submitted the case to the jury. While no witness testified that he actually saw Reed steal or drive the U–Haul van, inference of guilt may properly be drawn from circumstantial evidence. *See* United States v. Weston, 151 U.S. App.D.C. 264, 466 F.2d 435 (1972); Pendergrast v. United States, 135 U.S.App.D. C. 20, 416 F.2d 776, cert. denied 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969).

In the instant case, without resorting to speculation, a jury could reasonably have concluded from the testimony placing appellant Reed as the last person to enter the driver's side of the truck before it started away, that he must have been the person at the wheel. Such conclusion was also consistent with the testimony respecting his relative juxtaposition to the truck, just after its occupants had alighted. Such clear evidence of possession is sufficient to permit an inference of guilt of unauthorized use of a motor vehicle, United States v. Johnson, 140 U.S.App.D.C. 54, 57, 433 F.2d 1160, 1163 (1970); Scott v. United States, 125 U.S.App.D.C. 138, 369 F.2d 183 (1966). To be sure, the defendant's own testimony put into issue the matter of possession, but the resolution of credibility was properly left to the jury. Hill v. United States, D. C.App., 280 A.2d 925, 927 (1971).

---

1. Appellant Reed denied that he had entered the van from the driver's side, stating at the trial that he got in on the passenger's side, never drove the vehicle, and did not know that it was stolen until his companions so informed him when the vehicle was underway.

2. Reed explained this by testifying that even though he was not driving and left from the passenger's side, the actual driver ran ahead of him into the trees, thereby making it appear that appellant was the last out.

3. One officer testified that he had observed appellant drop the gun. The other police witness said that he had not seen the pistol fall but did see his partner pick it up.

4. He was acquitted of this first charge.

On the pistol carrying charge, it was certainly within the prerogative of the jury to have believed the direct testimony of the officer concerning the twirling incident notwithstanding appellant's disclaimer on the witness stand. *See* Smith v. United States, D.C.App., 292 A.2d 150 (1972).

In turning now to the challenged sentence, we note that appellant being of the age of 19 when convicted, was eligible under the Federal Youth Corrections Act, 18 U.S.C. § 5005 et seq., for commitment for treatment and supervision in lieu of imprisonment.[5] This court recently held in Small v. United States, D.C.App., 304 A.2d 641, 644 (1973):

> . . . [T]hat when the trial court imposes adult punishment upon a youth offender the record (1) must show that the sentencing judge was aware of the defendant's eligibility for Youth Act treatment and considered this treatment before imposing the adult sentence, and (2) must contain an explicit and reasoned determination that the defendant would *not* derive rehabilitative benefit from Youth Act treatment. . . .

■ In the case before us, the record clearly shows that the trial court satisfied the first of these two guidelines, for after conviction and before imposing sentence, the court committed him to the authorities at the Youth Center for observation and study with the object of obtaining the report specified in another provision of the Youth Corrections Act.[6] It was not until the court had received and examined this report that final sentence was imposed. In open court, the trial judge stated:

> The recommendation that I have . . . received under § 5010(e) after the examination is that he be sentenced as an adult, and I shall follow that.

■ It is contended that this statement falls short of an explicit determination that appellant would derive no rehabilitative benefit from Youth Act treatment. In *Small* we remanded the case for resentencing because of the absence of a finding by the trial court under § 5010(d) of the Youth Corrections Act that the offender would not derive benefit from the rehabilitative treatment contemplated by the preceding subsections of that Act. In that case, the trial court implicitly refused to make such a determination when requested to do so, stating that it had no intention of disclosing the presentence report.

In marked contrast to that case, the record on appeal here reveals that the trial court had before it two reports upon which it relied in making its determination. The first was a presentence report of the probation department of the Superior Court, describing in detail appellant's criminal record, extending from the time he was 12 years old up to the date of his latest conviction. This included two escapes from juvenile correctional institutions in 1968 and 1969, and one from the D.C. Jail in June of 1972, while awaiting sentencing in the present case. The second, prepared by the Classification Committee at the Youth Center was an evaluation and recommendation concurred in by the Board of Parole. It found that the offender would not benefit from the Youth Center's program and recommended that he be sentenced as an adult. Citing his history of involvement with the law and the past failures of correctional officials in effectuating a change in his attitude, the report concluded that "[t]he Committee as a whole did not see Mr. Reed as amenable to modifying his behavior . . . [and] was of the opinion that it would be quite some time before [he] showed any signs or sincere efforts for change." (From Committee Evaluation, August 21, 1972; R. II at 16.)

---

5. By the terms of § 5010 of that statute, a trial judge has several options. He may place the youthful offender on probation under subsection (a), or in the custody of the Attorney General for treatment under subsections (b) and (c), or impose the prison sentence provided as the penalty for the conviction of the particular offense.

6. 18 U.S.C. § 5010(e).

By expressly announcing that it would accept and follow these conclusions, the trial court in effect adopted as its own the finding that appellant would not benefit from Youth Act treatment and the reasons given in support thereof. Appellant, however, insists that this was not enough and that the trial court should have made independent findings. This thesis is at odds with a decision of the United States Court of Appeals for this circuit, sitting en banc in United States v. Coefield, 155 U.S.App. D.C. 205, 476 F.2d 1152 (1973), in which Judge Fahy, writing for the majority observed (at 1157):

> The approach in *Waters* [United States v. Waters, 141 U.S.App.D.C. 289, 437 F.2d 722] and *Ward* [United States v. Ward, 147 U.S.App.D.C. 149, 454 F.2d 992] would seem to presuppose a statement of reasons by the sentencing judge if these special provisions are not being utilized and the youth offender is sentenced as an adult. To require reasons to be stated is clearly not inconsistent with those decisions; and we now deem this to be essential to a knowledgeable administration of the Act as intended by Congress. When, however, prior to imposing a sentence, the judge has availed himself of the assistance afforded by section 5010(e), and after considering the report in light of the other data before him, follows its findings or recommendation in imposing sentence, additional reasons need not be stated, although, of course, the judge is not precluded from adding reasons of his own. [Footnotes omitted.]

We regard *Coefield* as an authoritative exposition of the proper construction of Section 5010(d) of the Youth Act, for as we previously observed both in the *Small*

case, where that opinion was cited with approval,[7] and in Paul v. United States, D.C.App., 301 A.2d 226 (1973), special deference should be accorded to holdings of federal circuits in the interpretation of a statute of national rather than local application although, of course, we are not bound by them. M. A. P. v. Ryan, D.C. App., 285 A.2d 310 (1971).

■ Accordingly, we hold that while the language of § 5010(d) may require a trial judge to make an explicit finding if he imposes an adult sentence notwithstanding a contrary recommendation by the Classification Committee and the Parole Board in a § 5010(e) report, he is free to follow such a report without making an express independent finding when he agrees with its conclusions based upon his own appraisal of the defendant's character and record.

In the case at bar, the trial judge did precisely what the *Coefield* opinion envisaged. He first requested the preparation of a presentence report by the Probation Department. At the time originally set for sentencing, he then could have sentenced the defendant as an adult or under the Youth Act. He decided, however, to follow the recommendation of the Probation Department and commit the defendant so that a further report could be prepared in accordance with § 5010(e).

After reading this report, he determined to follow its findings and recommendations, so stated in open court, and imposed an adult sentence. Under *Coefield* it was not incumbent upon him to state additional reasons for adopting a recommendation with which he agreed. In the view of this court the trial judge, in refraining from adding reasons of his own, acted within the scope of his discretion.[8]

---

7. Small v. United States, *supra* at 641 of 304 A.2d.

8. There are a number of reasons why a trial judge would prefer not to make an explicit finding of "no benefit" under the Youth Corrections Act if he decides to follow a recommendation adverse to defendant in a § 5010(e)

report (by the Classification Committee, the Parole Board, or both) and give an adult sentence, not the least of which is the effect such a finding might have on the person being sentenced. Essentially, the giving of an adult sentence constitutes an implicit finding that the chances of successfully rehabilitating a defendant are relatively poor. For the trial

The only cases drawn to our attention which seem to support appellant's views, even in the slightest degree, consist of three divisional decisions of the District of Columbia circuit handed down since the en banc *Coefield* holding of last February. United States v. Phillips, 156 U.S.App.D.C. 217, 479 F.2d 1200 (1973); United States v. Riley, 157 U.S.App.D.C. ——, 481 F.2d 1127 (1973); United States v. Tillman (D.C.Cir. No. 71-1352, June 6, 1973, vacated August 10, 1973, and set down for rehearing en banc). Plainly, these opinions—all written by the same judge and coming only from three judge divisions—do not carry the weight of the quoted en banc pronouncement in *Coefield*. Moreover, the last two drew extensive dissents from different judges, and in *Tillman* a third judge, expressing disagreement, called for en banc rehearing.

■ None of these expressly overrules the *Coefield* holding, for the *Phillips* opinion, the first of the three cited, noted that the court in *Coefield* had previously held that " . . . where a trial judge orders and follows the recommendation of 5010(e) study, '*additional* reasons need not be stated . . . .'"[9] But the *Phillips* opinion then went on to place a new and unprecedented limitation upon this rule by declaring that when the sentencing judge adopts the reasons in a 5010(e) report, such reasons "from whatever source" [presumably including any independent or supplementary findings by the trial judge] must "demonstrate a 'present and visible' rationality to Congressional objectives." A footnote explaining this thesis reads:

. . . There is no basis for distinguishing, for purposes of appellate review, between a judge's stated reasons and those he adopts in following the recommendation of a 5010(e) report. While a 5010(e) report may represent

the application of special expertise by the Youth Corrections authorities, that factor cannot relieve this court of its obligation to insure that reasons relied on by the experts are rationally related to Congressional objectives. [United States v. Phillips, 156 U.S.App.D.C. 217, 479 F.2d 1200, 1202–1203 n. 13 (1973).]

We are not persuaded that any such limitation on the *Coefield* rule is justified by either the wording of the Youth Act or considerations of sound judicial administration. Section 5010 of that Act, by its enumeration of several options, obviously was intended to vest significant discretion in the sentencing judge. The net effect of the *Phillips, Riley,* and *Tillman* holdings is to prevent such judge from ever exercising his authority not to commit for youth correction treatment unless he or the authors of the advisory report set forth reasons which an appellate court finds acceptable.

If this trilogy of cases can be taken as illustrative, such reasons would be most difficult to formulate. Thus, in *Phillips,* the trial court was told it should not have been persuaded by such factors as a background of robbery and petit larceny and the commission of another crime while on Youth Act probation under 5010(a); in *Riley,* an overcrowding of Youth Center facilities, a pattern of "aggressive robbery type" offenses, including in a period of six years a juvenile record of charges of petit larceny (4), housebreaking, attempted burglary, tampering with an automobile, armed robbery (holdup), and attempted robbery, were deemed insufficient reasons; in *Tillman* (a conviction for first degree murder), failure to respond to juvenile court treatment for prior offenses, a long criminal record, and an "assaultive" personality, were held inadequate to support the conclusion that the subject was an unlikely

judge to say so expressly while pronouncing sentence would, in all likelihood even further reduce the prospects for rehabilitation.

9. The quoted language is taken from Chief Judge Bazelon's opinion in the *Phillips* case, *supra* at 1202 of 479 F.2d.

prospect for deriving benefit from a Youth Act program.[10]

This comment is not intended to imply that this court deems as devoid of merit the grounds set forth in the majority opinions in these cases for disagreeing with the advisory reports which the sentencing judges followed. In our view, however, their underlying premise runs contrary to the historic principle that as a general proposition review of sentencing is not the province of an appellate court unless the trial judge imposes a sentence outside the range of discretion committed to him by Congress in statutes defining the penalties for particular offenses. *See* Foster v. United States, D.C.App., 290 A.2d 176 (1972). It is true that § 5010(d) of the Youth Act does require a finding by the sentencing judge if he exercises one of the four options available to him, but once that finding is made, we perceive nothing in either the Act or its legislative history which indicates that such discretionary action is a matter for appellate review.

Affirmed.

10. It must be remembered, of course, that rehabilitation is a continuing goal of all correctional institutions; a trial judge does not turn his back on the hope or possibility of rehabilitation by giving an adult sentence.